[No. B187386. Second Dist., Div. Eight. May 25, 2007.]

BESSIE GALLANIS-POLITIS, Plaintiff and Respondent, v.
ALFONSO MEDINA et al., Defendants and Appellants.

**COUNSEL**

Thomas, Donahue, Thomas & Hurevitz, Michael Thomas, Maureen Thomas; Greines, Martin, Stein & Richland, Martin Stein and Jens B. Koepke for Defendants and Appellants.

Gregory R. Ellis; Alexander & Yong, J. Bernard Alexander III and Tracy L. Fehr for Plaintiff and Respondent.

OPINION

BOLAND, J.—

## SUMMARY

A Los Angeles County (County) employee sued the County and a County official, asserting discrimination claims under state and federal law. In her third amended complaint, the employee also asserted a retaliation claim, and sued two other County supervisory employees as additional defendants with respect to that claim. She alleged the two supervisors obstructed her efforts to obtain bilingual bonus pay by conducting a pretextual investigation and preparing a report falsely concluding she was not entitled to bilingual pay. The two supervisors filed a special motion to strike the complaint under the anti-SLAPP (strategic lawsuit against public participation) statute, Code of Civil Procedure section 425.16. They contended that the retaliation claim against them arose from protected First Amendment activity, as the investigation was conducted and the report was prepared in response to a request from counsel for the County in connection with the employee's discovery requests in the ongoing lawsuit. The supervisors further asserted the employee could not prevail on the merits of her retaliation claim because the litigation privilege operated as an absolute bar to her claim. We agree with the supervisors on both points, and reverse the order of the trial court denying their special motion to strike the retaliation claim.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Initial complaint.*

In April 2004, Bessie Gallanis-Politis (Politis) filed a lawsuit against her employer, the Los Angeles County Department of Health Services, and Arturo Aguirre, the department's director of environmental health. She asserted causes of action for gender discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and civil rights violations (discrimination based on race and gender) under federal law. Her initial complaint alleged she is bilingual and was subjected to differences in salary compared with male and Latino coworkers, who received an increase in pay for their bilingual status while she did not. Her initial complaint also alleged "a pattern of harassment and retaliation," but the alleged conduct did not involve her bilingual status.

## 2. *Third amended complaint.*

On August 12, 2005, Politis filed a third amended complaint. In addition to the causes of action for gender discrimination and federal civil rights violations, she asserted causes of action under FEHA for race discrimination, harassment and retaliation. In connection with her retaliation claim, she named two additional defendants: Alfonso Medina, a bureau director and her "third level" supervisor, and Linda Ramirez, a manager and her "second level" supervisor.[1] Politis's complaint alleged numerous acts of retaliation, beginning around May 2001. With respect to Medina and Ramirez, however, the allegations centered on retaliatory acts following the filing of Politis's lawsuit in April 2004. The retaliatory acts included obstructing Politis's efforts to obtain bilingual pay, "e.g., with pretextual investigations of the necessity for bilingual employees," forcing her to file multiple duplicative forms, and subjecting her to heightened scrutiny, modifying and limiting her responsibilities, and limiting her career development. Specifically, Politis alleged:

—Numerous County employees, including Medina and Ramirez, "have repeatedly failed and refused to process [Politis's] Requests for Bilingual Bonus, or have conducted investigations with the sole purpose of preventing [Politis] from receiving a bilingual bonus . . . ."

—Before Politis filed her initial complaint, Medina had approved her request for bilingual pay (as of May 2003). However, in November 2004: "Medina directed that Ramirez conduct an investigation and prepare a report, which would and did in fact conclude that 'the need for a bilingual employee is not necessary' within the . . . Unit to which [Politis] had been assigned. Based on a pretextual directive given by Medina, and a pretextual investigation conducted by Ramirez, Ramirez prepared and submitted a November 23, 2004 report, which falsely understated the role and function served by [Politis] within her department, and the function of the department itself, in order to justify the refusal of bilingual bonus pay to [Politis]. This finding was made despite the fact that the [unit] serves a primary Latino community where the [County] has repeatedly confirmed a need for Spanish bilingual assistance."

—Politis was denied bilingual bonus payments at the behest and direction of defendant Aguirre, who invoked the false premise of Ramirez's report to

---

[1] Politis also alleged her federal civil rights claim against "all defendants," but did not identify or refer to Medina or Ramirez in the allegations specific to that claim.

falsely notify the County's employee relations department that Politis's "requests for bilingual pay, back to July 2003, were unfounded, based on the absence of a current need for Spanish bilingual employees within [Politis's] programs, or a need back to July 2003."

—Sixty days after Ramirez's report, on January 24, 2005, the County reversed itself and concluded a bilingual representative was necessary. Medina and Ramirez "always knew that a need for bilingual employees had always existed within [Politis's] programs."

—In early January 2005, Politis was finally tested and certified as Spanish bilingual. The County, however, continued to refuse to process her bilingual form. Aguirre and Medina "continued to place road blocks in the path of [Politis's] receipt of bilingual pay," including requiring her to "reinitiate the bilingual bonus paper work, from the first step" because the original request form "was now somehow inadequate," even though the original and the substitute forms were virtually identical. The requirement to submit a substitute form "constitutes a further act of retaliation."

—When Politis attended depositions in connection with this lawsuit, she logged her time as personal leave, the equivalent of an approved absence without pay, after obtaining approval from her designated supervisor. At Medina's direction, Ramirez unilaterally changed the reference on Politis's timecard to the derogatory reference of "unapproved absence without pay," directing Politis to initial and adopt the change, "and thereby be subjected to disciplinary action."

—Medina and Ramirez restricted Politis's job duties, preventing her from participating in projects or on committees to which Politis had devoted substantial efforts; required Politis "to account for her time in multiple and public manners"; and otherwise subjected Politis's "performance, job duties and comings and goings and use of the telephone" to heightened and excessive scrutiny "not visited upon other employees under the supervision of Medina and Ramirez."

3. *Special motion to strike.*

Medina and Ramirez (collectively, Medina) filed a special motion to strike Politis's third amended complaint against them. They asserted the complaint was based "on oral and/or written statements made by them in connection with an investigation of an issue pending before [the trial] court—namely whether [Politis] was or was not eligible for bilingual pay—an activity

expressly protected by the anti-SLAPP statute . . . ." Along with declarations from Medina and Ramirez, Medina submitted a declaration from Jill Jacobs, one of the County's attorneys. Jacobs stated that, in the course of preparing responses to discovery propounded by Politis, she contacted Medina "in order to obtain information regarding whether [Politis] had received bilingual pay, if that was not the case, why she had not received such pay and whether she was entitled to such pay."[2] Jacobs recalled that Medina "indicat[ed] that he would look into those issues and get back to me." Medina's motion asserted that the other, nonprotected activity alleged in the complaint was incidental or collateral to the claim founded on protected activity, and that a plaintiff may not immunize a cause of action challenging protected activity by including extraneous allegations of nonprotected activity. Medina further asserted that Politis could not demonstrate a probability of prevailing on the merits of her retaliation claim because their communications were responsive to inquiries made by defense counsel regarding issues raised by Politis in litigation and were absolutely privileged.

Politis's opposition asserted Medina's conduct was not protected activity under the SLAPP statute. Politis asserted, among other points, that deposition testimony belied the claim that the investigation was initiated at counsel's request, because at their depositions neither Medina nor Ramirez disclosed any litigation-related purpose for their actions. Further, Politis asserted that her retaliation claim was not based on the investigation, but on "affirmative conduct in fabricating false facts and conclusions," and that the deposition testimony of Barbara Hairston, her immediate supervisor and the project manager, demonstrated there was always a need for a bilingual speaker in Politis's unit.

### 4. Trial court's ruling and subsequent proceedings.

At the hearing, the court explained its tentative ruling to deny the motion: "Basically I do it because of a split of authority as to whether a cause of action regarding mixed acts, some of which are indeed protected, some are not protected, provides the basis for an anti-SLAPP motion. [¶] There is a split of authority on that question, as you know, and the question is now under review in the Supreme Court. [¶] So it was basically because of that concern I have denied the motion. [¶] You admit that some of the actions and statements of your clients, the individuals, were in fact not protected speech. Some you argue were. That's debatable. But it is in effect a mixed foundation for your motion."[3] Following argument, the court stated: "I think [Politis]

---

[2] Jacobs did not identify the discovery requests to which she alluded.

[3] The cases then pending in the Supreme Court to which the trial court alluded were later remanded to the Court of Appeal without resolution of the issue of the applicability of the anti-SLAPP statute to a cause of action alleging both protected and unprotected activity.

does demonstrate a reasonable probability of prevailing. Even if the statute applies—and I think that point is still debatable. I'm not persuaded that it does—and in view of the split of authority, I'm going to stand on the question of mixed support. Some items, some basis of the cause of action being involved in protected activity, others not, I will stand on the tentative ruling and deny the motion."

After the trial court denied Medina's motion to strike, the lawsuit continued against the County and Aguirre, and proceeded through a jury trial to judgment in favor of the County and Aguirre.[4] In a special verdict, the jury found that Politis engaged in protected activity, but that no employee of the County subjected her to retaliation. Meanwhile, Medina and Ramirez filed a timely appeal from the trial court's denial of their special motion to strike.[5]

## DISCUSSION

Given the jury's finding that no retaliation occurred, the question whether the trial court correctly denied Medina's special motion to strike is presented in an unusual procedural posture. In his reply brief, Medina argues that the jury's verdict eliminated the likelihood of Politis's prevailing at trial on her retaliation claim against Medina and Ramirez. However, Politis's subsequent appeal means, as Medina recognizes, that the judgment is not final. Consequently, because we do not know whether the judgment against her will be reversed and returned to the trial court for a new trial, we must necessarily proceed with a de novo review of the denial of Medina's anti-SLAPP motion.

Medina argues the anti-SLAPP motion should have been granted because (1) the statements and conduct upon which Politis bases her claim of retaliation by Medina and Ramirez were related directly to ongoing litigation and are therefore covered by the anti-SLAPP statute; (2) other allegations of

---

[4] Politis filed a notice of appeal from the judgment in favor of the County and Aguirre on November 30, 2006.

[5] This court granted Politis's motion to augment the appellate record with complete transcripts of the depositions of Politis, Medina and another County employee. In the interests of fully understanding the posture of the lawsuit, we grant Medina's November 17, 2006 motion to augment the record with a copy of the judgment in favor of the County and Aguirre, and with copies of the discovery requests which Medina asserts generated the investigation and communications at issue in this case. (The discovery requests consisted of Politis's request for admissions relating to bilingual pay—in substance, requests for admissions that various male employees receive bilingual pay; employees and members of management requested Politis to perform bilingual translation and interpretation as a part of her job duties; these requested duties were the same as those requested of the male employees receiving bilingual pay; and Politis requested and has not received bilingual pay.) However, none of the materials with which the appellate record has been augmented were before the trial court when Medina's anti-SLAPP motion was denied, and none are necessary to this court's review of the trial court's ruling.

nonprotected activity were tangential and do not obviate the application of the statute; and (3) Politis cannot establish a probability of prevailing on the merits of her retaliation claim against Medina and Ramirez because the litigation privilege operates as an absolute bar to her claim. We conclude Medina is correct and the trial court should have granted the special motion to strike the retaliation claim against Medina and Ramirez.

We first summarize the applicable law and then proceed to analyze its applicability to Politis's case.

1. *Applicable law.*

■ The governing principles were recently summarized by the Supreme Court in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*). A strategic lawsuit against public participation (SLAPP) "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." (*Id.* at p. 1055.) The anti-SLAPP statute was enacted as "a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen, supra,* 37 Cal.4th at pp. 1055–1056.) In evaluating an anti-SLAPP motion, the trial court first decides whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. (*Id.* at p. 1056.) " 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' . . ." (*Ibid.,* citation omitted; see also Code Civ. Proc., § 425.16, subd. (e)(2) [acts in furtherance of free speech or petition rights include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"].) Acts in furtherance of free speech or petition rights include "communicative conduct such as the filing, funding, and prosecution of a civil action." (*Rusheen, supra,* 37 Cal.4th at p. 1056.)

If the trial court finds the defendant has made a threshold showing that a cause of action arises from protected activity, it must then decide whether the plaintiff has demonstrated a probability of prevailing on the claim. To do so, plaintiff must show the complaint is legally sufficient and " ' "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." . . .' " (*Rusheen, supra,* 37 Cal.4th at p. 1056, citations omitted.)

2. *Politis's retaliation claim arises from acts by Medina and Ramirez in furtherance of their free speech or petition rights.*

In the first step of the anti-SLAPP analysis, two related questions are presented. Does Politis's claim arise, in whole or in part, from protected

activity? If it arises from both unprotected and protected activity, as Medina concedes, is the claim properly subject to an anti-SLAPP motion?

### a. *Politis's claim arises from protected activity.*

■ Medina made the necessary threshold showing that Politis's retaliation claim against Medina and Ramirez arose, at least in significant part, from protected activity. The anti-SLAPP statute by its terms protects "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (Code Civ. Proc., § 425.16, subd. (e)(2).) The courts have repeatedly emphasized that the focus in determining whether a claim is one "arising from" protected speech or petitioning must be "on the substance of [the] lawsuit . . . ." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).) *Cotati* summarized: "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's [Medina and Ramirez's] act underlying the plaintiff's [Politis's] cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*Cotati, supra*, 29 Cal.4th at p. 78.) In short, the relevant question is "[w]hat activity or facts underlie [Politis's] cause of action for [retaliation]?" (*Cotati, supra*, 29 Cal.4th at p. 79; see also *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 [124 Cal.Rptr.2d 530, 52 P.3d 703] [the statute's "definitional focus is . . . the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning"].)

Politis's complaint reveals that the fundamental basis for her retaliation claim against Medina and Ramirez is the allegedly pretextual investigation that Medina ordered and Ramirez conducted, and the allegedly false report Ramirez generated, about the need or lack of need for a bilingual employee in Politis's unit, and her lack of entitlement to bilingual pay. Medina presented evidence that, in response to an inquiry from counsel for the County stemming from Politis's discovery request, he undertook an investigation of whether Politis had received bilingual pay and, if not, whether she was entitled to it and why she had not received it. Ramirez was one of the persons to whom Medina submitted inquiries, and she wrote a memorandum to him concluding there was no need for a bilingual employee. The information

Medina received from Ramirez and others "was communicated to counsel for the County and to Mr. Aguirre." Aguirre then allegedly invoked the false premise of the Ramirez report to falsely notify the County's employee relations department that Politis's requests for bilingual pay were unfounded.[6]

It is difficult to reach any conclusion other than that the investigation and report are the acts upon which Politis's cause of action against Medina and Ramirez is based. Absent the investigation and report, nothing of substance exists upon which to base a retaliation claim against them. In addition, because the investigation and report were conducted and written in response to a request for information from counsel for the County, they are acts "in furtherance of [Medina's and Ramirez's] right of petition or free speech." (*Cotati, supra,* 29 Cal.4th at p. 78.)

Politis argues that the acts were not in furtherance of free speech or petition rights, asserting that no evidence exists that Medina and Ramirez acted "in furtherance of answering discovery or preparing a litigation defense." According to Politis, Ramirez "discloses no awareness that her 'investigation' was prompted by counsel, or in relationship to this lawsuit." However, Politis points only to excerpts from the deposition testimony of Medina and Ramirez, arguing that neither of them "disclosed any litigation-related purpose for their conduct" at their depositions. The cited testimony itself shows this is not the case.

Politis contends Medina "started the investigation of his own initiative, and not at the direction of county counsel." The only supportive evidence cited is this exchange from Medina's deposition:

"Q. And what is it that prompted you to have Miss Ramirez make the inquiry that resulted in this November 23, 2004 memo?

"A. There was [a] discussion with county counsel, and I took it upon myself to do some investigation."

Politis's interpretation of this exchange as evidence that Medina did not order the investigation as a result of counsel's inquiries is untenable. Similarly, Ramirez was asked when she first learned that Politis was seeking bilingual pay, and replied:

---

[6] There is no contention that Aguirre's or the County's actions were protected by the anti-SLAPP statute. At the hearing on Medina's motion in the trial court, counsel for the County and Medina stated: "[Politis] has a cause of action against the County itself and the decision-makers, but not against these two people who are only doing an investigation pursuant to what counsel needs to answer discovery. [¶] But we didn't file a motion against, or a SLAPP motion against them on behalf of the County. If the County makes the decisions and the County takes the actions, then on their investigation, and he proves that it's incorrect, then the County is going to be liable for that. But not these two individuals."

"A. I can't recall, but to my best recollection, it's during—maybe during the months of July, August [2004] when it was mentioned to me that there was a suit or indicated that that was part of Ms. Politis's suit—

"Q. July?

"A. —bilingual needs of 2004. And it could have been September. I just don't recall.

"Q. And who informed you of that?

"A. Mr. Medina."

This exchange fails to prove, or even suggest, anything because Ramirez was not asked, in the cited testimony, why she undertook the investigation. Ramirez's declaration, on the other hand, states that she was advised that Politis had filed a lawsuit and that a question had arisen as to whether her bilingual services were required.[7] No basis exists for concluding Ramirez's acts were not in furtherance of her First Amendment rights simply because she may not have known about the specific request from counsel. She clearly knew her investigation and report were related to the pending litigation.

In short, no evidence permits a conclusion that the investigation and memorandum upon which Politis's retaliation claim against Medina and Ramirez is founded were not acts undertaken in response to counsel's inquiries to Medina which, counsel avers, were made in the course of preparing responses to Politis's discovery requests. (See Code Civ. Proc., § 425.16, subd. (e)(2) [an act in furtherance of a person's right of petition or free speech includes "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"].) Thus, Medina and Ramirez made the required threshold showing that Politis's cause of action for retaliation arose, at least in significant part, from protected activity.[8]

---

[7] Ramirez's declaration states: "In November, 2004, I was advised by Alfonso Medina that Ms. Gallanis-Politis had filed a lawsuit in which she was making a claim with respect to the denial of bilingual pay, and a question arose as to whether Ms. Gallanis-Politis' bilingual services were required in CDC [Politis's unit]. Mr. Medina asked me to determine if Ms. Gallanis-Politis was receiving bilingual pay and if her bilingual services were required. At no time did Mr. Medina advise or instruct me as to what response or result of the investigation he wished to receive."

[8] Politis argues the anti-SLAPP statute does not apply "when purportedly protected conduct is performed with an improper motive . . . ." Politis misstates the law and misinterprets the cases she cites. None of the cited cases hold that the "motive" for protected activity can affect whether the anti-SLAPP statute applies. In *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388 [126 Cal.Rptr.2d 560], the plaintiff sued an insurer under the

b. *Because Politis's allegations of unprotected activity were incidental to her principal claim, her retaliation claim is subject to the anti-SLAPP statute.*

Politis's complaint alleges several retaliatory acts which Medina does not assert constitute protected activity. These acts consist, as more fully outlined above, of (1) Medina's requiring her, after she was certified as bilingual in January 2005, to "reinitiate the bilingual bonus paper work," even though the forms were virtually identical; (2) Ramirez's changing the reference on Politis's timecard for time spent attending depositions in this case to "unapproved absence without pay," subjecting her to discipline; and (3) restricting her job duties, preventing her from participating in projects or committees, requiring her to account for her time, and otherwise subjecting her to heightened and excessive scrutiny not visited upon other employees under the supervision of Medina and Ramirez. Politis argues that these acts, which are unrelated to the bilingual pay investigation, were "[t]he majority of the

---

unfair competition law alleging claims-mishandling conduct. State Farm filed an anti-SLAPP motion, arguing the complaint was based on and arose from confidential written and oral communications from State Farm in response to an investigation by the Department of Insurance (DOI) and that the plaintiff's action would interfere with State Farm's ability to respond to an official DOI proceeding. (*Gallimore, supra,* 102 Cal.App.4th at pp. 1391, 1393.) The court held that the DOI report may have triggered the plaintiff's action, but the action clearly did not arise from the report, or from any other communication by State Farm to the DOI, but instead arose from State Farm's claims-mishandling conduct. (*Id.* at pp. 1395, 1399.) The plaintiff sought no recovery from State Farm for its activity in communicating information to DOI, and did not allege "that any such communication was wrongful or the cause of any injury to him." (*Id.* at p. 1399.) By contrast, Politis's claim is that Medina and Ramirez's communicative acts—the pretextual investigation and report—were retaliatory acts that caused her injury, depriving her of bilingual pay. The other cases Politis cites are likewise of no avail. (See, e.g., *Flatley v. Mauro* (2006) 39 Cal.4th 299, 305 [46 Cal.Rptr.3d 606, 139 P.3d 2] [communications that constituted criminal extortion as a matter of law were not constitutionally protected free speech or petition, and the anti-SLAPP statute therefore did not apply]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 416–417 [9 Cal.Rptr.3d 242] (*Scott*) [anti-SLAPP statute did not apply to causes of action for personal injury because the wrongful, injury-producing conduct arose from defendant's act of manufacturing and selling a defective product causing plaintiff's injury, not from the manufacturer's advertising activity, which itself caused plaintiff no injury at all]; *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [135 Cal.Rptr.2d 903] [suit by rent control board against landlord alleging violations of rent control laws may have been triggered by landlord's filing of documents with the board; however, lawsuit was not based on the filing of the documents but on activity that preceded their filing]; *State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974, 977 [121 Cal.Rptr.2d 719] [insurer's action for declaratory relief did not arise from personal injury lawsuit defendants filed against the insured, but rather arose from the insured's tender of defense to the insurer and from the terms of an insurance policy issued well before the underlying litigation commenced, so anti-SLAPP statute did not apply].)

retaliatory conduct alleged," and that the anti-SLAPP statute therefore does not apply. We disagree, both on the facts and on the law.

■ The published appellate cases conclude that, where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to Code of Civil Procedure section 425.16 " 'unless the protected conduct is "merely incidental" to the unprotected conduct.' . . ." (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [35 Cal.Rptr.3d 31] (*Peregrine Funding*), citations omitted; see also *Scott, supra,* 115 Cal.App.4th at p. 414 [where both constitutionally protected and unprotected conduct is implicated by a cause of action, a plaintiff may not "immunize" a cause of action challenging protected free speech or petitioning activity "by the artifice of including extraneous allegations concerning nonprotected activity"; "[c]onversely, if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion"]; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906] ["a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action' "].)

■ In Politis's case, her allegations relating to the pretextual investigation and the false conclusions reported by Ramirez are not merely "incidental to a cause of action based essentially on nonprotected activity . . . ." (*Scott, supra,* 115 Cal.App.4th at p. 414.) On the contrary, the pretextual investigation allegations are at the heart of her retaliation claim against Medina and Ramirez, and her other allegations of nonprotected activity are " 'merely incidental' " to the protected conduct. (*Peregrine Funding, supra,* 133 Cal.App.4th at p. 672.) Her complaints about having to complete a new bilingual certification form, and about the notations on her timecard, are trivialities, none of which, we venture to say, could constitute the type of "adverse employment action" necessary to support a retaliation claim. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1036 [32 Cal.Rptr.3d 436, 116 P.3d 1123] (*Yanowitz*) [adverse employment action must be one which materially affects the terms and conditions of employment].) Moreover, Politis's opposition evidence was directed at the bilingual pay issue, without any reference to her allegations concerning timecards, excessive scrutiny, and so on.[9] Under these circumstances, it is difficult to reach any conclusion other

---

[9] Medina's motion to strike, on the other hand, included evidence that the timecard entries were promptly changed, after consultations with upper management, to "approved absence without pay," and also included evidence suggesting Politis's other allegations would not

than that Politis's allegations of retaliatory acts that were not protected speech or petitioning activity were essentially extraneous or collateral to her primary allegations, which arose from protected activity. (E.g., *Scott, supra,* 115 Cal.App.4th at p. 414 ["it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAP[P] statute applies"].) Consequently, her cause of action for retaliation was subject to the anti-SLAPP statute, and the trial court erred in concluding otherwise.

3. *Politis failed to demonstrate a probability of prevailing because her retaliation claim is barred by the litigation privilege.*

Because her retaliation claim arose from protected activity, Politis was required to demonstrate a probability of prevailing on the merits of her claim. Medina contends that Politis cannot prevail as a matter of law because the litigation privilege, which immunizes litigants from liability for torts which arise from communications in judicial proceedings, operates as an absolute bar to the claim. We agree. We first review the governing law on the litigation privilege, and then turn to its application in this case.[10]

The litigation privilege is codified in Civil Code section 47, which states, as relevant here, that "[a] privileged publication or broadcast is one made . . . [¶] [i]n any . . . judicial proceeding . . . ." (Civ. Code, § 47, subd. (b).) The Supreme Court explained the purpose, origins and development of the litigation privilege at some length in *Rusheen, supra,* 37 Cal.4th at pages 1057–1058. The significant points are these:

—The litigation privilege derives from common law principles establishing a defense to the tort of defamation. (*Rusheen, supra,* 37 Cal.4th at p. 1057.)

■ —The privilege is applicable to any communication, whether or not it amounts to a publication, and to all torts except malicious prosecution.[11] (*Rusheen, supra,* 37 Cal.4th at p. 1057.)

---

support a retaliation claim. Politis submitted no responsive declaration or other evidence relating to the timecard allegation, or to her other allegations of job duty restrictions and "excessive scrutiny."

[10] Medina also contends the official duty and common interest privileges bar Politis's claims. These grounds were not raised before the trial court and we do not consider them.

[11] In *Ribas v. Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637], the Supreme Court observed that the purpose of the judicial proceedings privilege "seems no less relevant to [statutory] claims."

—The privilege applies " 'to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.' " (*Rusheen, supra,* 37 Cal.4th at p. 1057, quoting *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) The privilege is not limited to statements made during trial or other proceedings, "but may extend to steps taken prior thereto, or afterwards." (*Rusheen, supra,* 37 Cal.4th at p. 1057.)

—The principal purpose of the litigation privilege "is to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."[12] (*Silberg, supra,* 50 Cal.3d at p. 213, citation omitted.)

■ —The litigation privilege protects only publications and communications; it does not protect noncommunicative conduct. The threshold issue in determining the applicability of the privilege "is whether the defendant's conduct was communicative or noncommunicative." (*Rusheen, supra,* 37 Cal.4th at p. 1058.)

—The distinction between communicative and noncommunicative conduct "hinges on the gravamen of the action." (*Rusheen, supra,* 37 Cal.4th at p. 1058.) "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature."[13] (*Ibid.*) The privilege "extends to noncommunicative acts that are necessarily related to the communicative conduct." (*Id.* at p. 1065.) In short, "unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Ibid.*)

■ The litigation privilege applies to any communication " '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that

---

[12] In addition, other purposes are "to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation . . . ." (*Rusheen, supra,* 37 Cal.4th at p. 1063.)

[13] *Rusheen* cited acts that have been deemed communicative and protected by the litigation privilege: attorney prelitigation solicitations of potential clients and subsequent filing of pleadings in the litigation, and testimonial use of the contents of illegally overheard conversation. (*Rusheen, supra,* 37 Cal.4th at p. 1058.) Acts deemed noncommunicative and unprivileged include prelitigation illegal recording of confidential telephone conversations; eavesdropping on a telephone conversation; and a physician's negligent examination of a patient causing physical injury. (*Ibid.*)

have some connection or logical relation to the action.' " (*Rusheen, supra*, 37 Cal.4th at p. 1057, quoting *Silberg, supra*, 50 Cal.3d at p. 212.) Because each quoted element is present in this case, the only pertinent question is whether the gravamen of Politis's retaliation claim is an "independent, noncommunicative, wrongful act" or "an act that was communicative in its essential nature." (*Rusheen, supra*, 37 Cal.4th at pp. 1065, 1058.) The answer is apparent. We have already determined that the gravamen of Politis's cause of action was the investigation and report that ensued in response to counsel's requests for information in connection with Politis's discovery requests. The investigation conducted in response to the request, and the report reflecting the results of that investigation, are quintessentially communicative acts. We cannot identify, and Politis has not identified, any other "independent, noncommunicative, wrongful act" upon which her retaliation claim against Medina and Ramirez, premised on the denial of bilingual pay, could conceivably be based. (*Rusheen, supra*, 37 Cal.4th at p. 1065.)

That the litigation privilege operates as a bar to Politis's claim should come as no surprise, given the congruity between protected activity within the meaning of the anti-SLAPP statute and the communicative conduct that is protected by the litigation privilege. Indeed, one court has observed that clauses (1) and (2) of subdivision (e) of Code of Civil Procedure section 425.16—the SLAPP statute—defining protected activity to include statements or writings made before a judicial proceeding or made in connection with an issue under review by a judicial body—"are parallel to and coextensive with the definition of privileged communication under Civil Code section 47, subdivision (b)."[14] (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1474 [37 Cal.Rptr.3d 133].)

■ Politis makes two arguments in an attempt to avoid the bar of the litigation privilege. The first argument is that Medina asserted the litigation privilege only with respect to the investigation, and not with respect to "the remainder of [Politis's] retaliation claim." However, the remainder of Politis's claim consists of claims that can either be described as trivial or as to which she has produced no evidence. (See fn. 9, *ante*, & accompanying text.) As to those claims, Politis has not made a prima facie case of retaliation, which

---

[14] Another court has pointed out that the protections afforded by the anti-SLAPP statute and the privilege "are not entirely coextensive," in that malicious prosecution actions are not barred by the litigation privilege, but are subject to a motion to strike under the anti-SLAPP statute. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 [131 Cal.Rptr.2d 201].) So, as *Navellier* observes, acts falling within the anti-SLAPP statute because of their connection with judicial proceedings do not "inevitably" fall within the litigation privilege; however, the privilege plainly "informs interpretation of the 'arising from' prong of the anti-SLAPP statute . . . ." (*Navellier v. Sletten, supra*, 106 Cal.App.4th at p. 770.)

requires a showing that (1) Politis engaged in a protected activity, (2) Medina and Ramirez subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453 [116 Cal.Rptr.2d 602].) The required "adverse employment action" must "materially affect the terms and conditions of employment," considering the totality of the circumstances. (*Yanowitz, supra,* 36 Cal.4th at p. 1036.) Except for the denial of bilingual pay, as to which Medina and Ramirez's liability is predicated on an investigation and report protected by the litigation privilege, Politis presented no evidence that would support a finding of an adverse employment action. Consequently, she has not met her burden of showing a probability of prevailing on the merits of "the remainder of [her] retaliation claim."

Politis's second argument is that the litigation privilege does not apply because Medina and Ramirez "engaged in non-communicative injurious conduct, in improperly preventing [Politis] from receiving bilingual pay during the same time frame that the 'investigation' occurred." According to Politis, the litigation privilege does not extend "to their separate actions of depriving [Politis] of payment for wages owed to [Politis] for performing bilingual duties." As to Medina and Ramirez, however, they engaged in no "separate actions" depriving Politis of bilingual pay. Their actions depriving her of pay consist only of the allegedly pretextual investigation and false report of the results, which conduct is communicative in nature. In short, while the litigation privilege does not bar suit for injuries "arising from noncommunicative conduct that occurred during a judicial proceeding" (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211 [271 Cal.Rptr. 191, 793 P.2d 524]), no such noncommunicative conduct by Medina or Ramirez occurred.[15]

---

[15] *Kimmel v. Goland* held the litigation privilege did not apply to noncommunicative acts (the illegal recording of confidential telephone conversations) for the purpose of gathering evidence to be used in future litigation; the injury alleged (invasion of privacy) resulted from the illegal taping, not from the publication or broadcast of the information contained in the conversations. (*Kimmel v. Goland, supra,* 51 Cal.3d at pp. 205, 209.) Kimmel cited *Ribas v. Clark, supra,* 38 Cal.3d 355, noting the distinction in that case "between injury allegedly arising from communicative acts" (an attorney's testimony) and "injury resulting from noncommunicative conduct, i.e., the invasion of privacy resulting from the attorney's eavesdropping." (*Kimmel v. Goland, supra,* 51 Cal.3d at p. 211.) In Politis's case the injury alleged—the retaliatory denial of bilingual pay—resulted from the pretextual investigation and memorandum, and not from any other misconduct by Medina or Ramirez.

## DISPOSITION

The order denying Medina and Ramirez's special motion to strike Politis's third amended complaint asserted against them is reversed, and the cause is remanded with directions to grant the motion and to award the attorney fees and costs to which Medina and Ramirez are entitled under Code of Civil Procedure section 425.16, subdivision (c). Medina and Ramirez further are to recover their costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.