Filed 9/18/13  Angelo v. Winet CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER E. ANGELO et al., | D061463 |
| Plaintiffs, Respondents, and Cross-Appellants, | |
| v. | (Super. Ct. No. 37-2011-00096151-CU-NP-CTL) |
| RANDALL WINET et al., | |
| Defendants, Appellants, and Cross-Respondents. | |

APPEALS from an order of the Superior Court of San Diego County,

Joel M. Pressman, Judge.  Affirmed.

Wingert Grebing Brubaker & Juskie, Charles R. Grebing, Robert M. Juskie and

Andrew A. Servais for Defendants, Appellants, and Cross-Respondents.

Angelo & Di Monda, Christopher E. Angelo and Joseph Di Monda for

Plaintiffs, Respondents, and Cross-Appellants.

Attorneys Christopher E. Angelo, Joseph Di Monda, and the law firm of

Angelo & Di Monda LLP (collectively, A&D) sued attorneys Randall Winet, Marilyn

Perrin, and the law firm of Winet, Patrick & Weaver (collectively, WPW) for actions undertaken while WPW represented Leonel Arellano in a personal injury action. The trial court denied WPW's special motion to strike A&D's complaint under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. (All undesignated statutory references are to the Code of Civil Procedure.) The trial court found that although WPW made a threshold showing that A&D's complaint arose from protected activity, A&D demonstrated a probability of prevailing on their claims.

WPW appeal the denial of their motion, arguing A&D did not demonstrate a probability of prevailing on the merits. In part, WPW maintain A&D cannot prevail because the crux of A&D's claims are based on communications protected by the litigation privilege (Civ. Code, § 47, subd. (b)). A&D cross-appeals, contending the claims set forth in their complaint do not arise from protected activity subject to a special motion to strike and are not barred by the litigation privilege.

Assuming without deciding that A&D's claims are subject to the anti-SLAPP law, we conclude A&D demonstrated a probability of prevailing on the merits and WPW did not defeat that showing as a matter of law. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In an underlying lawsuit, Bun Bun Tran sued Arellano, a Mexican citizen, for injuries arising out of a motor vehicle accident. A&D represented Tran in that action. Arellano's insurer, Progressive Insurance Company (Progressive), retained WPW to

2

represent Arellano's interests. A dispute arose as to whether Progressive had an opportunity to settle the case for Arellano's policy limit and if it would be responsible for any over-limits judgment.

Tran requested an assignment of Arellano's bad faith rights against Progressive in exchange for a covenant not to execute. The parties engaged in discussions regarding the terms of the covenant but were unable to reach an agreement. Thereafter, Guillermo Marquez from the Mexican Consulate met with Arellano in prison. Marquez informed Arellano that Tran's attorney, Angelo, contacted the Mexican Consulate. At a second meeting, Marquez presented Arellano with a document and explained the document would assign Arellano's rights in a lawsuit to Tran. Arellano executed the assignment, and the Mexican Consulate sent it to Angelo.

After obtaining the assignment, Marquez introduced Arellano to attorney Anthony Kornarens and explained that Kornarens was interested in Arellano's case. Kornarens had worked with Angelo on other cases. Kornarens asked Arellano to see all documents relating to Arellano's case, including correspondence from WPW, and stated he wanted to represent Arellano in a case against WPW. Arellano retained Kornarens to represent him.

On July 19, 2009, Perrin received a telephone call from Karen Clark, a legal assistant at A&D. (All further date references are to 2009 unless otherwise specified.) Clark stated that she left A&D and wanted to tell Perrin about illegal and unethical conduct in the Tran case. After Perrin and Clark arranged a meeting, Clark stated Arellano was being "set up." On July 20, A&D rehired Clark. That same day, Perrin

3

met with Clark at a hotel. During the meeting, Perrin told Clark not to divulge any privileged information and then discussed the case with her. Clark explained that A&D obtained Arellano's assignment by utilizing a political contact in Mexico. Clark also informed Perrin that Arellano intended to sue WPW, A&D wanted to financially ruin Winet and his attorneys, and A&D's Mexican contact was now blackmailing A&D.

Perrin told Winet about her conversations with Clark. On July 22, Winet informed Progressive that Clark asked WPW to pay for documents that prove Clark's allegations against A&D. After WPW denied Clark's request for money, Clark stated she might still give the documents to Perrin. The next day, Winet instructed Perrin to begin the process of filing a complaint with the State Bar and stated he would look into potential FBI involvement. On August 4, Winet and Perrin met with two FBI agents and told the agents about their communications with Clark.

On August 5, Winet visited Arellano in prison. According to Arellano, Winet brought a copy of Arellano's assignment with him to the meeting. After Arellano stated that he did not have a copy of the assignment with him, Winet or his assistant explained they obtained the document from "another source."

On August 6, Perrin met with FBI agents and agreed that the agents would wait in the parking lot while Perrin met with Clark. According to Perrin, at a meeting with Clark that day, Clark provided her with Arellano's assignment to Tran. The next day, Perrin "provided *copies of everything* [she] received from Clark to [an FBI agent]." (Italics added.) On August 10, Progressive put a note in its claim file listing several

4

documents provided by Clark, including Arellano's assignment, "a memo to file by Angelo indicating he was contacted by the Consulate," a letter from the Consulate to Angelo, and "indications of phone calls to Angelo's office."

WPW, on behalf of Arellano, moved to disqualify A&D as Tran's counsel. WPW asserted A&D indirectly communicated with Arellano through the Mexican Consulate and Kornarens and improperly obtained an assignment from Arellano. Winet claimed he learned of the assignment when he visited Arellano in prison on August 5. The trial court denied the motion.

In October, Arellano sued Progressive for bad faith. During the bad faith action, A&D learned privileged and confidential documents were missing from its files and became suspicious that Clark gave A&D's documents to WPW. A&D discovered that WPW included unsigned A&D pleadings as exhibits to a writ petition. A&D concluded that Clark gave its files to WPW because there was no way WPW could have obtained the unsigned pleadings unless it was given copies made directly from A&D's computer files, and Clark was the only person, other than Angelo and Di Monda, who had access to those files. A&D also believed WPW gave A&D's documents to Progressive because Progressive made discovery demands allegedly targeting the missing documents.

Clark admitted that she removed files from A&D's office, that she gave a copy of Arellano's assignment to Perrin, and that she copied files from A&D's computers without their permission. Clark also stated that starting from July 6 to just before the time she was rehired by A&D, she had approximately 10 communications with Perrin,

5

including one face-to-face meeting.  After Clark returned to A&D, Perrin called her and asked to meet.  Around August 8, Clark and Perrin had a second face-to-face meeting.  At some point, Perrin asked Clark for documents.

In August 2011, A&D filed an action against WPW, alleging causes of action for replevin, trespass, trespass to chattels, conversion and injunctive relief.  As to each cause of action, A&D claimed WPW wrongfully possessed or caused Clark to obtain confidential documents from A&D.  A&D sought general and special damages and an injunction requiring, among other things, WPW "to not refuse to return to [A&D] all documents taken from the offices of [A&D], all copies of said documents, all notes made from those documents and all information contained therein."

DISCUSSION

I. *WPW's Requests for Judicial Notice*

WPW requested that we take judicial notice of a letter, dated September 20, 2011, from Tom Stahl, chief of the civil division in the United States Attorney's Office, to WPW's counsel.  WPW argues the letter explains its inability to obtain a declaration or evidence from the FBI concerning the FBI's contacts with Perrin.  WPW also requested that we take judicial notice of Tran's opening brief in *Arellano v. Progressive W. Ins. Co.* (Mar. 28, 2013, G045674 [unpub. opn.]) (the Progressive Case) and the court's opinion in that case.  We deny WPW's requests.

A.  Letter from Stahl to WPW's Counsel

The letter was not presented to the trial court.  Generally, documents not before the trial court are beyond the scope of appellate review.  (See *Vons Companies, Inc. v.*

6

*Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons Companies*); *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.)   Even if we were to take judicial notice of the document's existence, judicial notice does not extend to its contents or the truth of the matters stated therein.  (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.)

Lastly, even if we were to assume the matters stated in the letter are true, the letter does not stand for the proposition WPW asserts.  Rather, Stahl's letter merely states that his advice to the United States Attorney was to deny WPW's request for a declaration by an FBI agent concerning contact with Perrin.  The letter also provides authority regarding the futility of a subpoena to get the declaration.  These matters do not support WPW's contentions on appeal.

B.  Documents from the Progressive Case

Tran's opening brief in the Progressive Case was filed on October 17, 2011.  WPW's anti-SLAPP motion was not heard until February 12, 2012.  Accordingly, WPW had an opportunity to present the brief to the trial court.  WPW has failed to indicate whether Tran's brief was before the trial court and, if so, whether judicial notice was taken by that court.  (Cal. Rules of Court, rule 8.252(a)(2)(B).)  The document is not in the appellate record; thus, we presume it was not presented to the trial court and deny WPW's request for judicial notice.  (*Vons Companies*, *supra*, 14 Cal.4th at p. 444, fn. 3.)

We also deny WPW's request for judicial notice of the unpublished opinion in the Progressive Case.  That opinion pertains to Arellano's bad faith action against

7

Progressive. The court affirmed the trial court's decision denying Arellano's motion for summary adjudication and reversed the trial court's decision finding Progressive did not breach a duty to accept a settlement demand from Tran's attorney. The opinion in the Progressive Case is not relevant to our determination of the issues on appeal.

## II. *Burden of Proof and Standard of Review*

A cause of action arising from a constitutionally protected right of free speech may be stricken unless the plaintiff establishes the probability he or she will prevail on the claim. (§ 425.16, subd. (b)(1).) The court must first determine whether the defendant bringing the special motion to strike made a prima facie showing that the activity underlying the cause of action is constitutionally protected. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the defendant establishes this, the burden shifts to the plaintiff to show the likelihood of prevailing on the cause of action. (*Ibid*.) In order to establish a probability of prevailing, a plaintiff must substantiate each element of the alleged cause of action through competent, admissible evidence. (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568.) "'An assessment of the probability of prevailing on the claim looks to trial, and the evidence that will be presented at that time.'" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236, italics omitted.) "Thus, declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26.)

In ruling on an anti-SLAPP motion, the court does not weigh the evidence or make credibility determinations; rather, once the plaintiff makes a prima facie showing of facts which would support a judgment in his or her favor, the court considers the defendant's opposing evidence, but only to determine if it defeats the plaintiff's showing as a matter of law by establishing an absolute defense to the claim or the absence of an element of the cause of action. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) The plaintiff need only show a case of "'minimal merit,'" a burden which is "'not high.'" (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989 (*Grewal*).) We conduct a de novo review of the trial court's ruling on a special motion to strike. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 845.)

### III. *A&D Met its Burden*

WPW argues the trial court erred in finding A&D showed a probability of prevailing on the merits of their claims. Assuming without deciding that WPW met its burden to show A&D's claims are subject to the anti-SLAPP law, we conclude A&D produced sufficient evidence that, if credited, shows a reasonable probability of prevailing and WPW has not defeated that showing as a matter of law.

Preliminarily, we note that both sides submitted declarations to support their positions that were replete with speculation, hearsay and other infirmities. We

9

disregard the inadmissible statements in those declarations in our consideration of the issues on appeal.

A&D's complaint sets out claims for replevin, trespass, trespass to chattels, conversion and injunctive relief. WPW does not challenge the adequacy of the evidentiary showing on any of the affirmative elements of A&D's claims. Instead, WPW asserts A&D could not demonstrate probable success on the merits because WPW's activities were absolutely privileged under Civil Code section 47 as they were either done in connection with an official proceeding or involved the FBI.

Here, the parties have differing views regarding the gravamen of A&D's claims. A&D characterize their claims as involving WPW's illegal acts of receiving stolen documents. WPW, on the other hand, characterize their conduct as communications with the FBI and State Bar and in anticipation of moving to disqualify A&D and set aside Arellano's assignment. On close analysis of the complaint, it appears A&D went to great lengths to frame their claims as property torts. In its general allegations, A&D sets forth WPW's alleged wrongful conduct, including communications with Clark, receipt of A&D's privileged and confidential documents, use of A&D's documents in the Tran litigation, and reports to the FBI and State Bar. However, the principal activities underlying A&D's causes of action include WPW's retention of A&D's privileged and confidential documents, disclosure of the documents to third parties, and conspiring with Clark to enter A&D's property and take privileged and confidential documents.

10

"[O]nce a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106.) If credited, A&D's evidence supports at least part of their claims. Specifically, A&D's evidence reveals that Perrin met with Clark and potentially obtained documents from her prior to any direction from the FBI to do so. Clark claimed she had approximately 10 communications with Perrin between approximately July 6 to July 20 and, at some point, Perrin asked her for documents. Clark also admitted to removing files from A&D's office, providing Arellano's assignment to Perrin, and copying files from A&D's computers without their permission. A few days after Perrin's second meeting with Clark, Progressive put a notation in its claim file listing documents provided by Clark. Later, WPW included unsigned A&D pleadings as exhibits to a writ petition, and Progressive made discovery demands targeting A&D's missing documents. These facts suggest WPW went beyond communicating with the FBI and following its directions because it retained copies of A&D's documents and disclosed them to Progressive. As such, A&D's claims have at least the requisite "'minimal merit'" to survive an anti-SLAPP motion. (*Grewal*, *supra*, 191 Cal.App.4th at p. 989.)

11

Thus, we next consider whether A&D's claims are barred by the litigation privilege. "The privilege in [Civil Code] section 47 is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing.'" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38.) Civil Code section 47 provides the following: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ."

A number of cases have considered whether the litigation privilege extends to noncommunicative *conduct*. In *Kimmel v. Goland* (1990) 51 Cal.3d 202, 205 (*Kimmel*), our high court determined whether the privilege applied to unlawful recording of telephone conversations made in anticipation of litigation. Relying on an earlier case in which the court found an attorney could not avoid liability for unlawful eavesdropping on a phone conversation, but was immune from suit for his subsequent testimony regarding the conversation (*Ribas v. Clark* (1985) 38 Cal.3d 355, 364–365 (*Ribas*)), the *Kimmel* court concluded the litigation privilege did not apply because plaintiffs alleged they suffered injury from the recording of confidential conversations, "not from any 'publication' or 'broadcast' of the information contained in [those] conversation." (*Id.* at p. 209.) In reaching this conclusion, the court distinguished between communicative and noncommunicative acts and reasoned that "an extension

12

of [Civil Code] section 47(2) to unlawful conduct undertaken to obtain evidence in anticipation of litigation, would lead to unacceptable consequences. Suppose, a prospective defendant kept important documents at home. If a prospective plaintiff, in anticipation of litigation, burglarized defendant's premises in order to obtain evidence, plaintiffs here would apparently apply the privilege to protect the criminal conduct. Such an extension of [Civil Code] section 47(2) is untenable." (*Id.* at p. 212.)

In contrast, in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1049 (*Rusheen*), our high court found that conduct undertaken to collect a judgment, such as obtaining a writ of execution and levying on a judgment debtor's property, were protected by the litigation privilege. The *Rusheen* court explained that "'[the litigation privilege] applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶]' . . . Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.] [¶] Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether

the injury allegedly resulted from an act that was communicative in its essential nature." (*Id*. at pp. 1057–1058.)  This emphasis on the gravamen of the action has been followed in subsequent cases.  (See, e.g., *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 957 (*Jacob B.*) [finding letter written by supervisor of victim witness program in connection with a family law proceeding regarding visitation rights was a communicative act protected by the litigation privilege]; *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1249 [litigation privilege applies to filing of a legal action]; *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 616–617 [litigation privilege barred employee's retaliation claim because the gravamen of her action was based on an investigation and report that were communicative acts].)

In our view, the conduct at issue in this case is more similar to the type of nonprivileged conduct at issue in *Ribas* and *Kimmel* than the type of acts which fell under the litigation privilege in *Rusheen* and *Jacob B.*  Here, the alleged wrongful activity underlying A&D's claims—trespass and retention and disclosure of A&D's documents—is noncommunicative in nature.  A&D seek an injunction and damages resulting from WPW's acts of conspiring with Clark to trespass on A&D's property, keeping A&D's documents, making copies of those documents, and providing them to third parties such as Progressive.  Although A&D reference WPW's communications with Clark and the FBI, those allegations are not vital to A&D's causes of action.

If A&D had sued WPW for injuries resulting from WPW's communications with the FBI and State Bar or for conduct undertaken at the FBI's direction, its litigation privilege defense may have been more viable.  However, as we noted, A&D

14

carefully crafted its complaint to assert property claims that fall outside the scope of litigation related activity.  Given that the gravamen of this case was noncommunicative conduct, the litigation privilege does not apply.

DISPOSITION

The order denying WPW's anti-SLAPP motion to strike is affirmed.  A&D shall recover costs on appeal.


McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

15