Filed 1/27/14  Kahn v. Dillon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CARL KAHN,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>TIMOTHY P. DILLON et al.,<br><br>        Defendants and Appellants. | D062715<br><br><br>(Super. Ct. No. 37-2012-00091827-CU-NP-CTL) |


        APPEALS from an order of the Superior Court of San Diego County, William S.

Dato, Judge.  Affirmed.


        Burkhardt & Larson and Philip Burkhardt for Plaintiff and Appellant.

        Wingert Grebing Brubaker & Juskie LLP, Charles R. Grebing and Andrew A.

Servais for Defendants and Appellants.

        These appeals are from an order granting in part and denying in part a special

motion to strike Carl Kahn's claims against Timothy P. Dillon and his law firm, Dillon &

Gerardi, APC (collectively Dillon), for malicious prosecution and abuse of process based

on Dillon's representation of a client in a prior action against Carl and his sister Margaret

Kahn.[1] Carl appeals the portion of the order striking the abuse of process claim, and

Dillon appeals the portion refusing to strike the malicious prosecution claim. We affirm.

I.

BACKGROUND

A. *Prior Action*

1. *Complaint*

Dillon represented Mohammed Namvar in a prior action against Margaret and

Carl and other defendants for damages for "gross mismanagement" of Namvar's real

property assets. In the complaint, Namvar alleged Margaret was a real estate broker and

mortgage broker whom he knew from prior business dealings and to whom he granted a

power of attorney to allow her to manage his properties while he sought treatment for

substance abuse. Namvar complained that Margaret "engaged in a continuous pattern of

mismanagement," including putting title to his properties in her own name, refinancing

properties on unfavorable terms, selling properties for less than they were worth, failing

to rent out properties, and failing to account properly for her management activities.

Namvar's claims against Carl arose out of Margaret's management of one of

Namvar's properties located in La Quinta. According to Namvar, Margaret used the

power of attorney he had granted her to convey the property to Carl, who one month later

---

[1] Because Carl and Margaret have the same last name, we use their first names for clarity and brevity in this opinion. In so doing, we intend no disrespect or undue familiarity.

2

conveyed it to Margaret in her name alone. When Namvar demanded that Margaret convey the property back to him, she refused. Namvar alleged these conveyances caused him to lose his equity in the property and to suffer adverse income tax consequences. Based on these allegations, Namvar sued Carl for compensatory and punitive damages for aiding and abetting Margaret's tortious conduct and for negligence in failing to inquire into the reasons for the conveyances or whether Namvar consented to them.

2.     *Deposition of Carl*

Michael Bishop, an attorney with Dillon's law firm, deposed Carl. Carl was unrepresented by counsel during the deposition. Bishop asked Carl many questions about his financial situation, including his sources of income for the previous 20 years; the real properties he has owned, how he financed the purchases, and at what prices he sold them; his credit rating; and where he did his banking. Carl did not object to or refuse to answer any of these questions.

3.     *Settlement, Trial, and Judgment*

Margaret settled with Namvar. The case proceeded to a bench trial against Carl on causes of action for negligence and aiding and abetting Margaret's tortious conduct.

In its statement of decision, the trial court (Hon. William R. Nevitt, Jr.) found that after a series of conveyances by which Namvar and Margaret became joint tenants of the La Quinta property, Margaret, acting on her own behalf and as Namvar's attorney in fact, conveyed the property to Carl so that he could try to refinance the property. One month later, Carl conveyed the property to Margaret after he determined he could not do so. Approximately two months later, Namvar conveyed the property to Margaret so that she

3

could try to refinance it. Margaret then refinanced the property with a negative amortization loan, but refused Namvar's demands that she convey the property back to him. Margaret eventually sold the La Quinta property for less than the amount due on the loan. The court also specifically found that Carl had no knowledge of or involvement in Margaret's decisions to refinance the property with a negative amortization loan or to refuse to convey the property to Namvar.

Based on these findings, the trial court concluded Namvar did not establish any of the essential elements of his claims for negligence and aiding and abetting Margaret's misconduct and entered judgment for Carl.

B.      *Current Action*

1.      *Complaint*

After Carl obtained the favorable judgment in the prior action, he sued Dillon for malicious prosecution and abuse of process. Carl alleged Dillon lacked probable cause to commence or maintain the prior action on behalf of Namvar because Dillon knew Margaret had authority to undertake the refinancing efforts on which the action was based. Carl also alleged Dillon acted maliciously both in filing the prior action for the purpose of pressuring Margaret into a settlement and in maintaining the prior action against Carl after Margaret settled. Carl further alleged Dillon misused discovery in the prior action in order to disclose Carl's private financial information, to embarrass him, and to pressure Margaret into settling. Carl sought to recover as damages the attorney fees he had incurred in the prior action and also sought punitive damages.

4

## 2. *Anti-SLAPP Motion*

Dillon filed a special motion to strike under the anti-SLAPP[2] statute. (Code Civ. Proc., § 425.16.) In support of the motion, Dillon included a memorandum of points and authorities, his own declaration, and numerous exhibits. Dillon argued Carl's claims for malicious prosecution and abuse of process were subject to the anti-SLAPP statute because both claims arose out of protected litigation activity. Dillon further argued Carl could not establish a probability of success on either claim. As to the malicious prosecution claim, Dillon asserted there was probable cause to sue Carl based on his participation in transferring title of the La Quinta property from Namvar to Margaret, including the recording of "false deeds," and an expert's opinion that Margaret's conduct fell below the standard of care for real estate professionals. Dillon also contended Carl had no evidence Dillon acted with malice in prosecuting the prior action. As to the abuse of process claim, Dillon claimed the discovery taken in the prior action was protected by the absolute litigation privilege of Civil Code section 47, subdivision (b).

## 3. *Opposition to Anti-SLAPP Motion*

Carl filed opposition to the anti-SLAPP motion, including a memorandum of points and authorities, declarations from two of his attorneys and Namvar's brother, and several exhibits. Carl conceded his malicious prosecution and abuse of process claims both fell within the scope of the anti-SLAPP statute, but argued the claims had "minimal merit" and therefore should not be stricken.

---

2    SLAPP is an acronym for strategic lawsuit against public participation.

As to the malicious prosecution claim, Carl argued Dillon lacked probable cause to initiate and maintain the claims for negligence and aiding and abetting Margaret's tortious conduct. Carl contended he breached no duty owed to Namvar, and Namvar's conveyance of the La Quinta property to Margaret after the conveyances between Margaret and Carl eliminated the possibility that any action by Carl caused the damages suffered by Namvar. Carl also argued Dillon acted with malice in prosecuting the prior action against Carl because attorneys with Dillon's firm stated that they (1) expected to lose the claims against Carl, (2) continued to sue Carl in order to induce Namvar to settle with Margaret, and (3) "regretted opting for a bench trial because a jury would have been more likely than a judge to punish Carl for Margaret's alleged wrongdoing."

As to the abuse of process claim, Carl contended Dillon used a deposition for an improper purpose, namely, to obtain information about Carl's private financial affairs in violation of both the constitutional right of privacy (Cal. Const., art. I, § 1) and the statutory requirement that a plaintiff obtain a court order before conducting discovery on a defendant's financial condition for purposes of liability for punitive damages (Civ. Code, § 3295, subd. (c)). Carl further contended the litigation privilege did not bar his abuse of process claim because his financial condition had no relation to Namvar's claims in the prior action.

4.     *Reply in Support of Anti-SLAPP Motion*

In reply to Carl's opposition, Dillon filed a memorandum of points and authorities, declarations from himself and his colleague Bishop, and an additional exhibit. Dillon argued Carl had not met his burden to establish a probability of success on either the

6

malicious prosecution claim or the abuse of process claim. Dillon contended Carl's undisputed participation in the various transfers of the La Quinta property established probable cause to sue him in the prior action. By failing to submit a declaration or otherwise explain that participation, Dillon claimed, Carl did not show the lack of probable cause essential to his malicious prosecution claim. Dillon also asserted Carl's purported evidence of malice showed only vigorous pursuit of a claim on behalf of Namvar. Finally, Dillon argued Carl could not prevail on his abuse of process claim because the deposition questioning that underlay the claim was clearly protected by the litigation privilege.

     5.    *Order on Anti-SLAPP Motion*

The trial court granted the special motion to strike the abuse of process claim, on the ground the litigation privilege barred the claim. The court, however, denied the special motion to strike the malicious prosecution claim, on the ground Carl had shown a probability of prevailing on that claim. According to the court, "the fact that Namvar independently deeded the [La Quinta] property to Margaret only two months after Carl had conveyed it to her supports a conclusion that [Dillon] lacked probable cause to believe Carl's conduct, even if wrongful, was a substantial factor in causing any harm to Namvar." The court also determined Carl had made a prima facie showing of malice by submitting "evidence suggesting that [Dillon] tried the [prior action] against [Carl] without believing it was meritorious and in order to induce Namvar to settle with the other defendants."

7

Both Dillon and Carl appealed the order. (Code Civ. Proc., §§ 425.16, subd. (h)(1), 904.1, subd. (a)(13).)

## II.

## DISCUSSION

Both parties challenge the trial court's order on Dillon's anti-SLAPP motion. Carl contends the court correctly refused to strike his malicious prosecution claim, because he established a prima facie case; but erroneously struck his abuse of process claim, because he established a prima facie claim that is not barred by the litigation privilege. Conversely, Dillon contends the court correctly struck Carl's abuse of process claim, because it is barred by the litigation privilege; but erroneously refused to strike his malicious prosecution claim, because Carl did not meet his burden to prove Dillon prosecuted the prior action without probable cause and with malice. For reasons we shall explain, we conclude the trial court ruled correctly with respect to both claims.

A. *General Principles Governing Anti-SLAPP Motions*

When a party files a special motion to strike, the anti-SLAPP statute requires the court to engage in a two-step process. First, the court determines whether the moving party has shown that the challenged cause of action arises from protected speech or petitioning activity. (Code Civ. Proc., § 425.16, subds. (b)(1), (e); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Second, if the moving party has made such a showing, the court then determines whether the nonmoving party has shown a probability of prevailing on the claim, by pleading a legally sufficient claim and supporting it with evidence that, if credited, would suffice to sustain a judgment. (Code

8

Civ. Proc., § 425.16, subd. (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.)  The court considers the pleadings and evidence submitted by the parties to determine only whether the nonmoving party has established a prima facie case; the court does not weigh the evidence to determine whether it is more probable than not that the nonmoving party will prevail on the claim.  (Code Civ. Proc., § 425.16, subd. (b)(2); *Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.)  We review an order granting or denying an anti-SLAPP motion de novo.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

B.      *Application to Dillon's Anti-SLAPP Motion*

We now apply the two-step process to Carl's claims against Dillon.  The parties agree, as do we, that Carl's malicious prosecution and abuse of process claims against Dillon arose from protected petitioning activity and therefore were subject to being stricken under the anti-SLAPP statute.  (See, e.g., *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 548 [malicious prosecution]; *Booker v. Rountree* (2007) 155 Cal.App.4th 1366, 1370-1371 [abuse of process].)  The parties disagree on whether Carl met his statutory burden to show a probability of prevailing on the claims, with Carl contending that he met his burden as to both claims and Dillon contending that Carl did not meet his burden as to either claim.  We analyze each claim separately below.

1.      *Malicious Prosecution Claim*

Dillon contends the trial court should have stricken Carl's malicious prosecution claim because Carl did not show a probability of prevailing on the claim.  To establish a cause of action for malicious prosecution, the plaintiff must prove that a prior action that terminated in his favor was commenced or continued at the direction of the defendant

9

without probable cause and with malice.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*); *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 (*Zamos*); *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 199.)  There is no dispute that the prior action terminated in Carl's favor or that Dillon directed the litigation of the prior action.  The dispute concerns whether Dillon had probable cause to sue Carl and whether Dillon acted with malice in doing so.  We thus turn to those issues.

a.     *Probable Cause*

Probable cause to assert a claim exists when the claim, objectively considered, is legally tenable.  (*Zamos*, *supra*, 32 Cal.4th at p. 971; *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 453 (*Drummond*).)  Probable cause exists if a reasonable attorney would conclude, based on the known facts, that the claim is legally sufficient and can be substantiated by competent evidence.  (*Zamos*, at p. 971; *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1540 (*Jay*).)  " 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' " (*Soukup*, *supra*, 39 Cal.4th at p. 292.)  "Probable cause, moreover, must exist for every cause of action advanced in the underlying action.  '[A]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted . . . .' " (*Ibid.*)  Whether Dillon had probable cause to sue Carl in the prior action is a question of law. (*Zamos*, at p. 971.)

Thus, to determine whether Dillon, as Namvar's attorney, had probable cause to sue Carl in the prior action, we must answer the following question:  Based on the facts

10

known to Dillon, would any reasonable attorney have thought the negligence and aiding and abetting claims asserted against Carl were *both* legally tenable?  We answer in the negative because no reasonable attorney would have considered legally tenable Namvar's negligence claim against Carl.

The "well-known elements of any negligence cause of action" are "duty, breach of duty, proximate cause and damages."  (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614.)  Namvar's negligence claim was based entirely on Carl's participation in two transfers of the La Quinta property that took title out of Namvar's name and put it into Margaret's name alone.  Namvar's theory was that Carl breached his duty to exercise reasonable care to inquire into the reasons for the transfers or whether Namvar consented to them, and thereby caused Namvar to lose his equity in the property and to suffer adverse income tax consequences.  This theory was not legally tenable because any reasonable attorney would have concluded that three of the four elements of the negligence claim could not be established.

First, Carl owed Namvar no duty to ascertain the reasons for the transfers of the La Quinta property or whether Namvar consented to them, because Namvar had given Margaret a broad power of attorney, which she exercised to convey the property to Carl. A power of attorney authorizes an agent to perform specified acts on behalf of the principal (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 21), and "it is only in the case where the agent lacks authority that the principal may exact the duty of inquiry and that the failure to inquire imposes a penalty upon the [third party]" (*Palo Alto etc. Assn. v. First Nat. Bank* (1917) 33 Cal.App. 214, 223).  Here, the power of attorney was in the

11

form prescribed by statute, signed by Namvar, notarized, and specifically authorized Margaret to act on behalf of Namvar in real property transactions. (See Prob. Code, § 4401 [prescribing uniform statutory form power of attorney].) Where, as here, a power of attorney has been properly executed and appears valid on its face, a third party ordinarily may rely upon it and is not liable to the principal for doing so. (*Id.*, § 4303, subd. (a); *Kaneko v. Yager* (2004) 120 Cal.App.4th 970, 982.)[3] Thus, "generally when dealing with a broad power of attorney, there is no obligation on a third party to go behind the power." (*Milner v. Milner* (1990) 183 W.Va. 273, 277 [395 S.E.2d 517, 521]; accord, *Iglesias v. Pentagon Title & Escrow, LLC* (2012) 206 Md.App. 624, 663 [51 A.3d 51, 74] [when fully executed and notarized power of attorney authorized agent to execute documents in connection with real estate purchase on behalf of principal, escrow company involved in transaction had "no duty to inquire behind the power"].)

Second, since Carl owed Namvar no duty to inquire into the reasons for the transfers or Namvar's consent, Carl obviously could not breach that duty. Even if we were to assume Carl had such a duty, no reasonable attorney would have believed Namvar could prove Carl breached that duty. Namvar's conveyance of the property to Margaret, acknowledged by a notary in a formal grant deed, accomplished the same

---

3      Dillon argues Carl could not rely on Margaret's power of attorney because Namvar received no consideration for the transfer. Dillon relies on the rule that a "power of attorney conferring authority to sell, exchange, transfer or convey real property for the benefit of the principal does not authorize a conveyance as a gift or without a substantial consideration." (*Shields v. Shields* (1962) 200 Cal.App.2d 99, 101.) That rule does not apply because Margaret's conveyance to Carl was supported by his agreement to assume the mortgage debt by refinancing the mortgage loan. When Carl could not do so, he promptly conveyed the property back to Margaret.

outcome as the prior conveyances between Carl and Margaret and effectively ratified those conveyances.  (See *Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 704 ["Ratification is approval of a transaction that has already taken place."]; *White v. Moriarty* (1993) 15 Cal.App.4th 1290, 1295 [same].)  The effect of that ratification was to treat the conveyances between Carl and Margaret as if they originally had been authorized by Namvar, and to cure any defects in the form or manner of their execution.  (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 (*Rakestraw*); *City of Monterey v. Jacks* (1903) 139 Cal. 542, 558.)

Third, Carl did not cause the damages of which Namvar complained.  To establish causation, the plaintiff must show the defendant's conduct was a substantial factor in bringing about the harm to the plaintiff.  (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052-1053; *Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 899.)  The defendant's conduct is not a substantial factor in bringing about the plaintiff's harm if the harm would have befallen the plaintiff even had the defendant's conduct not occurred.  (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 186; *Mills*, at p. 899.)  Here, the loss of equity and the adverse income tax consequences Namvar allegedly suffered resulted from his conveyance to Margaret of his entire interest in the La Quinta property, which she then refused to convey back to him, encumbered with a negative amortization mortgage loan, and sold for less than the amount due on the loan.  Since all of those acts occurred after and independently of the conveyances between Margaret and Carl, Namvar would have sustained the claimed losses even if Carl had not participated in the earlier transfers.

13

Hence, Namvar could not establish the essential causation element of his negligence claim against Carl.

We further conclude no reasonable attorney knowing what Dillon knew would have thought the negligence claim against Carl was legally tenable. When Namvar sued Carl in the prior action, Dillon knew about Margaret's power of attorney, the various transfers of the La Quinta property and Carl's limited involvement in them, Margaret's encumbrance of the property, and her refusal to reconvey the property to Namvar, because all of those matters were specifically alleged in the complaint Dillon prepared and filed. Moreover, Dillon introduced into evidence the power of attorney, the deeds, and the note for the mortgage loan at the trial in the prior action. After examining these documents, considering the dates on which the pertinent events occurred, and analyzing the elements of a negligence claim, no reasonable attorney would have thought Namvar could establish the duty, breach, or causation element of the claim. In other words, Dillon did not have probable cause to sue Carl for negligence, because "any reasonable attorney would agree" the claim was "totally and completely without merit." (*Zamos*, *supra*, 32 Cal.4th at p. 970.) Furthermore, because a malicious prosecution action " 'lies when but one of alternate theories of recovery is maliciously asserted' " (*Soukup*, *supra*, 39 Cal.4th at p. 292), Carl made the prima facie showing of lack of probable cause needed to defeat Dillon's anti-SLAPP motion (*id.* at p. 291).

Scattered throughout his briefing, Dillon offers several arguments in opposition to our conclusion that Carl made a showing of lack of probable cause sufficient to support his malicious prosecution claim. None is persuasive.

14

Dillon's main argument is that expert testimony at the trial of the prior action —

that the conveyances of the La Quinta property between Margaret and Carl "did not

comply with the custom and practice of the industry for a real estate broker doing

property management and financial management for a principal or client" — "alone

establishes probable cause." We disagree. The expert's testimony was plainly

insufficient to establish probable cause to sue *Carl* for negligence, because the expert

stated he reviewed the conveyances "to see what opinion [he] could derive based on the

custom and practice of the industry as to whether . . . *Margaret Kahn's conduct* complied

with the custom and practice of the industry." (Italics added.) Although Margaret was a

real estate broker managing properties for Namvar, Carl was not; and the expert

expressed no opinion regarding Carl's conduct.

Dillon also contends there was probable cause to pursue the negligence claim

because Carl's involvement in the various transfers of the La Quinta property violated the

prohibition of Penal Code section 115 against recording "any false or forged

instrument,"[4] and those violations constituted negligence per se. Again, we disagree.

Under the doctrine of negligence per se, the failure to exercise due care is presumed if,

among other things, a person violates a statute, the violation proximately causes harm to

another, and the harm results from an occurrence of the nature the statute was designed to

---

[4] As pertinent here, the statute provides: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony." (Pen. Code, § 115, subd. (a).)

15

prevent.  (Evid. Code, § 669, subd. (a); *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 938.)  The "core purpose" of the statute Dillon claims Carl violated "is to protect the integrity and reliability of public records" (*People v. Bell* (1996) 45 Cal.App.4th 1030, 1061) by "prevent[ing] the recordation of spurious documents knowingly offered for record" (*Generes v. Justice Court* (1980) 106 Cal.App.3d 678, 681-682).  Even if we assume, without deciding, that the deeds between Carl and Margaret were false or forged, recording those deeds did not cause the harm Namvar alleged in the prior action.  As we have explained, the adverse income tax consequences and lost equity for which Namvar sued Carl resulted from Namvar's transfer of the La Quinta property to Margaret and her subsequent encumbrance and sale of the property (see pp. 13-14, *ante*), events in which Carl had no involvement and not of the type Penal Code section 115 was designed to prevent.  The negligence per se doctrine thus does not apply.  (See, e.g., *Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 498 ["no liability can be predicated upon noncompliance with a statutory command if the act or omission had no causal connection with the plaintiff's injury"]; *Victor v. Hedges* (1999) 77 Cal.App.4th 229, 238 [negligence per se inapplicable when statute violated "was not designed to prevent the type of occurrence that resulted in plaintiff's injury"].)

Dillon further argues there was probable cause to sue Carl based on Namvar's testimony that he was "completely under the influence" and told Margaret he "had just used" when he conveyed the La Quinta property to her.  According to Dillon, since "Namvar's testimony remained a constant" in the prior action and his intoxication prevented the conveyance from being considered a ratification (see *Rakestraw*, *supra*, 8

16

Cal.3d at p. 73 [ratification must be "truly voluntary in character"]), probable cause existed throughout the prior action. We are not persuaded. Although an attorney generally may rely on information provided by a client, if the attorney later learns the information is false, he cannot continue to rely on it in prosecuting an action and may be liable for malicious prosecution if he does. (*Zamos*, *supra*, 32 Cal.4th at p. 973; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 223.) Here, other information available to Dillon indicated Namvar was not intoxicated when he conveyed the La Quinta property to Margaret. Most importantly, the grant deed was acknowledged by a notary, which is strong evidence Namvar voluntarily executed the deed. (See, e.g., *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1185 [acknowledgment is formal declaration before authorized official by person executing instrument that execution " 'is his free act and deed' "]; *Ware v. Julian* (1932) 122 Cal.App. 354, 355 [notarization is prima facie evidence of due execution of instrument].) Additionally, Margaret testified Namvar did not tell her he had just used drugs; and one of Carl's attorneys stated in a declaration that "Bishop concurred with [her] that [Namvar] had not been high on drugs when he signed and delivered [the] deed." In reviewing the trial court's ruling on the anti-SLAPP motion, we are required to accept as true the evidence favorable to Carl (*Zamos*, *supra*, 32 Cal.4th at p. 965; *Daniels*, at p. 215); and doing so, we conclude the evidence is sufficient to show a lack of probable cause (see *Soukup*, *supra*, 39 Cal.4th at p. 292 [attorney lacks probable cause " 'if he relies upon facts which he has no reasonable cause to believe to be true' "]).

17

Next, Dillon complains Carl did not establish a lack of probable cause because he did not submit a declaration in opposition to the anti-SLAPP motion and "has never explained why he agreed to go on title to a property owned by a stranger, knowing he had no interest, and then happily transfer[red] the interest back to his sister alone." Carl, of course, had no obligation to submit his own declaration as part of the opposition to Dillon's anti-SLAPP motion. All Carl had to do to defeat the motion was to make " 'a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [him] is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) As we have explained, the declarations and other evidence submitted in connection with the anti-SLAPP motion were sufficient to establish a prima facie case of lack of probable cause. In any event, it is simply not true that Carl never explained his involvement in the transfers of the La Quinta property. At his deposition in the prior action, Carl testified he agreed to the transfers to try to help Margaret obtain refinancing at a lower interest rate; and he submitted a copy of the transcript of the deposition in opposition to the anti-SLAPP motion.

Dillon also complains that in ruling that Carl had made a prima facie showing of lack of probable cause, the trial court erroneously relied on Judge Nevitt's findings in the prior action that Namvar had not presented evidence sufficient to establish any of the elements of his claims against Carl. We agree with Dillon that those findings cannot be considered as evidence of lack of probable cause. The statement of decision from the prior action was before the trial court by way of judicial notice. Although the court could take judicial notice that certain findings were made, it could not take judicial notice of the

18

truth of those findings. (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 590; *Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120.) Any erroneous use by the trial court of the statement of decision does not require reversal, however. "[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) Because the challenged ruling was correct based on evidence that was properly before the trial court, we may not reverse on the ground that the court erroneously relied on Judge Nevitt's findings in the prior action.

Finally, Dillon devotes much of his briefing to arguing that Carl did not meet his burden to establish that the claim for aiding and abetting Margaret's tortious conduct was maliciously prosecuted against him in the prior action. We need not, and do not, address these arguments. Our Supreme Court repeatedly has held that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability *when some but not all of those grounds were asserted with malice and without probable cause*." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 671, italics added; accord, *Soukup*, *supra*, 39 Cal.4th at p. 292; *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57 & fn. 5; *Singleton v. Perry* (1955) 45 Cal.2d 489, 497-498.) Hence, Carl's prima facie showing that there was no probable cause to sue him for negligence in the prior action was sufficient by itself to defeat Dillon's anti-SLAPP motion insofar as it challenged the

19

malicious prosecution claim; Carl did not also have to make a prima facie showing that there was no probable cause to sue him on the aiding and abetting theory.

b.     *Malice*

The malice element of a malicious prosecution claim relates to the subjective intent or purpose with which the defendant acted in prosecuting the prior action. (*Soukup*, *supra*, 39 Cal.4th at p. 292; *Jay*, *supra*, 218 Cal.App.4th at p. 1543.) "The malice required . . . is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose." (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383 (*Albertson*).) "[T]he 'principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' " (*Ibid*.; accord, *Jay*, at p. 1543.) Whether Dillon acted with malice in prosecuting the prior action against Carl presents a question of fact. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874; *Drummond*, *supra*, 176 Cal.App.4th at p. 452.)

Here, Carl submitted evidence from which a trier of fact could find Dillon prosecuted the prior action against Carl with malice. A declaration from one of the attorneys who represented Carl in the prior action recounted a conversation she had with Bishop, an attorney with Dillon's firm, after the trial. Bishop told her that he and Dillon

20

"expected to lose on the issues of causation and damages."  Another attorney who represented Carl in the prior action stated in a declaration that he asked Dillon why he continued to sue Carl after Namvar had received a substantial settlement from Margaret and other defendants.  Dillon responded that he had assured Namvar he would continue prosecuting the action "in order to induce [Namvar] to accept the settlement from the co-defendants."  Namvar's brother submitted a declaration stating he had attended a meeting with Namvar and Dillon during which there was a discussion of "Dillon's rationale and motivation for suing [Carl].  [Dillon] stated that he had conducted an investigation . . . regarding [Carl's] financial condition and had determined . . . it [would be] advantageous to bring him into the lawsuit and to continue to prosecute the action against him."  Based on this evidence,[5] a trier of fact could find that " 'the person initiating [the negligence claim against Carl did] not believe that [the] claim [might] be held valid,' " or that " 'the proceedings [were] initiated for the purpose of forcing a settlement which ha[d] no relation to the merits of the claim.' " (*Albertson*, *supra*, 46 Cal.2d at p. 383.)  "Moreover, malice can also be inferred from the evidence that [Dillon] lacked probable cause to initiate and maintain the [prior] action against [Carl]." (*Soukup*, *supra*, 39 Cal.4th at p. 296.)  Carl therefore made a prima facie showing of malice sufficient to defeat Dillon's anti-SLAPP motion.  (*Id.* at p. 291.)

---

5       Dillon objected to this evidence in the trial court on relevance, hearsay, and other grounds, but the court overruled the objections.  Because Dillon has not challenged these rulings on appeal, "any issue concerning the correctness of the trial court's evidentiary rulings has been waived." (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 739, fn. 4.)

Dillon insists, however, that Carl "has come nowhere close to refuting Dillon's declaration and supporting evidence negating any claim of malice." According to Dillon, he had no incentive to sue Carl other than to fulfill his fiduciary duty vigorously to represent Namvar; he did not even know Carl before commencing the prior action; and there was no evidence he bore Carl any ill will. But, evidence sufficient to establish malice is not limited to proof that Dillon bore ill will toward Carl; evidence that Dillon prosecuted the prior action against Carl primarily for an improper purpose may suffice. (*Albertson*, *supra*, 46 Cal.2d at p. 383; *Jay*, *supra*, 218 Cal.App.4th at p. 1543.) As we have explained, Carl submitted evidence from which a trier of fact reasonably could find that Namvar sued Carl because Dillon viewed Carl as a "deep pocket" who might settle or put pressure on Margaret to settle, not because Dillon believed Carl was liable for negligence. Dillon's contrary protestations that he was merely performing his duty of zealous advocacy, and his and Bishop's denials that they made the statements attributed to them by Carl's attorneys and Namvar's brother, only "serve to create factual disputes that are not sufficient grounds upon which to grant the anti-SLAPP motion." (*Jay*, at p. 1545.) We therefore conclude Carl's evidentiary showing was "sufficient to establish malice for the limited purpose of defeating [Dillon's] motion[] to strike." (*Soukup*, *supra*, 39 Cal.4th at p. 296.)

2.      *Abuse of Process Claim*

Carl contends the trial court erred by striking his abuse of process claim because he established a probability of prevailing on the claim, and the litigation privilege (Civ. Code, § 47, subd. (b)) does not bar the claim. We disagree.

22

To establish a cause of action for abuse of process, the plaintiff must prove the defendant used the process for an ulterior motive and, in the course of using the process, willfully did something unauthorized by the process. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*); *Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792.) Here, Carl claimed Dillon "misused the taking of a deposition to conduct impermissible discovery of Carl's assets and financial condition" in violation of his constitutional privacy rights (Cal. Const., art. I, § 1; *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656) and statutory restrictions on pretrial discovery of a defendant's financial condition (Civ. Code, § 3295, subd. (c); *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 119-120). In support of this claim, Carl submitted the transcript of his deposition taken in the prior action, which included extensive questioning by Bishop about Carl's finances. (See pt. I.A.2., *ante*.) Even if we assume, without deciding, that this was sufficient to establish a prima facie case of abuse of process, the claim would be barred by the litigation privilege.

The litigation privilege generally precludes imposition of tort liability for any "publication or broadcast" made in connection with a "judicial proceeding." (Civ. Code, § 47, subd. (b); see *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952 (*Jacob B.*).) The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto" (*Rusheen*, *supra*, 37 Cal.4th at p. 1057), including depositions and other pretrial discovery (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 637-638; *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 615-617 (*Gallanis-Politis*); *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226,

23

243 (*Sipple*)).  The privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).)  If a communication satisfies these criteria, the privilege defeats an abuse of process claim based on the communication.  (See, e.g., *Rusheen*, *supra*, 37 Cal.4th at p. 1058; *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 536, 543-544 (*Mallard*); *Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1429.)

Under these authorities, Dillon may not be held liable for abuse of process.  The inquiry into his financial condition of which Carl complains took the form of questioning during a deposition conducted by Bishop, an attorney representing Namvar in the prior action.  Such questioning thus occurred "in judicial or quasi-judicial proceedings" and was conducted "by litigants or other participants authorized by law."  (*Silberg*, *supra*, 50 Cal.3d at p. 212; see *id.* at p. 219 [attorney for party qualifies as "participant"]; *Sipple*, *supra*, 71 Cal.App.4th at p. 243 ["a deposition is considered a judicial proceeding within the meaning of Civil Code section 47, subdivision[] (b)"].)  Furthermore, since Namvar sued Carl for punitive damages in the prior action and "a plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition" (*Adams v. Murakami* (1991) 54 Cal.3d 105, 123), the deposition questions of which Carl complains were asked "to achieve the objects of the litigation" and "ha[d] some connection or logical relation to the [prior] action" (*Silberg*, at p. 212; cf. *Mallard*, *supra*, 188 Cal.App.4th at p. 544 [privilege covers subpoenas issued to discover

24

information that would support defense]). Hence, the questions are protected by the litigation privilege.

Carl argues the litigation privilege does not apply "[b]ecause the deposition was conducted in a manner not authorized by law, and the particulars of [his] financial condition had no relation to the claims brought by Namvar . . . ." Carl asserts that because personal financial information falls within the zone of privacy protected by the California Constitution and Namvar had not obtained a court order authorizing pretrial discovery into his financial condition, Bishop's deposition questions on that subject "were off limits." According to Carl, such "impermissible questioning was conducted for an improper purpose — to obtain asset discovery. It was therefore not protected by the litigation privilege." We are not persuaded.

The fact that the deposition questions concerned Carl's private financial information does not make the litigation privilege inapplicable. The privilege applies fully to discovery into private matters put in issue by litigation. (*Mallard*, *supra*, 188 Cal.App.4th at p. 543-544; cf. *Jacob B.*, *supra*, 40 Cal.4th at p. 961 ["the litigation privilege applies even to a constitutionally based privacy cause of action"].) The fact Dillon did not obtain the statutorily required court order before asking the deposition questions (Civ. Code, § 3295, subd. (c)) also does not defeat application of the litigation privilege. Although we do not condone Dillon's failure to comply with the statutory restrictions on pretrial discovery of Carl's financial condition, our Supreme Court has held that " 'it is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be

25

concerned with [subsequent derivative] actions . . . .' " (*Rusheen*, *supra*, 37 Cal.4th at p. 1064.) "The salutary policy reasons for an absolute privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings." (*Silberg*, *supra*, 50 Cal.3d at p. 218.) "Moreover, the denial of an abuse of process claim is mitigated by the fact that [Carl] had adequate alternative remedies [in the prior action]." (*Rusheen*, at p. 1064.) He could have objected and refused to answer the questions (*Jabro v. Superior Court* (2002) 95 Cal.App.4th 754, 759; *Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 997, 999; *Fults v. Superior Court* (1979) 88 Cal.App.3d 899, 903), or terminated the deposition and sought a protective order (Civ. Code, § 3295, subds. (a), (c); *Richards v. Superior Court* (1978) 86 Cal.App.3d 265, 273). Carl may not, however, now sue Dillon in a separate action for abuse of process. (*Rusheen*, at pp. 1064-1065; *Mallard*, at pp. 543-544.)

Carl also argues, for the first time in his reply brief, that the litigation privilege does not bar his abuse of process claim because Dillon's conduct that gave rise to the claim was not "communicative." (See *Rusheen*, *supra*, 37 Cal.4th at p. 1058 ["litigation privilege protects only publications and communications"].) According to Carl, "the gravamen of the action was the extraction of privileged financial information in contravention of Civil Code section 3295. It was not a 'publication or broadcast' as required by Civil Code section 47." We reject this argument. We ordinarily do not consider new arguments raised in an appellant's reply brief, "because such consideration would deprive the respondent of an opportunity to counter the argument." (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Moreover, the argument is

26

frivolous. The litigation "privilege is applicable to any communication, whether or not it amounts to a publication [or a broadcast]" (*Gallanis-Politis*, *supra*, 152 Cal.App.4th at p. 615); and asking questions at a deposition, which Carl argued in his opening brief constituted the " 'abuse' at issue here," is "quintessentially communicative" (*id.* at p. 617).

In sum, "[b]ecause the trial court correctly found that there was no reasonable probability [Carl's] abuse of process claim would prevail on the ground [Dillon's] allegedly wrongful conduct was privileged (Civ. Code, § 47, subd. (b)), it properly granted the anti-SLAPP motion (Code Civ. Proc., § 425.16) . . . ." (*Rusheen*, *supra*, 37 Cal.4th at p. 1065.)

## DISPOSITION

The order is affirmed. The parties shall bear their own costs on appeal.

IRION, J.

WE CONCUR:

MCDONALD, Acting P. J.

MCINTYRE, J.

27