Filed 12/12/14  Lawrence v. County of San Bernadino CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JEFFREY ROBERT LAWRENCE, | D066204 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVDS1113974) |
| COUNTY OF SAN BERNARDINO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino County, Donna G. Garza, Judge.  Reversed.

Gutierrez, Preciado & House, Calvin House and Clifton A. Baker for Defendant and Appellant.

Sofonio & Associates and Rex P. Sofonio for Plaintiff and Respondent.


INTRODUCTION

Jeffrey Robert Lawrence alleges he was subjected to an internal investigation and dismissed from his position as a deputy public defender for the County of San Bernardino

(the County) in retaliation for reporting his superiors for alleged violations of conflict of interest laws and rules. The County appeals an order denying its special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16.)[1] The County contends the trial court erroneously concluded the gravamen of these claims do not arise from protected activity and are not subject to the anti-SLAPP statute. We agree with the County and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts in the light most favorable to plaintiff, the party opposing the anti-SLAPP motion. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

A

Lawrence was employed by the County as a deputy public defender from September 1998 until he was discharged in October 2010. He received work performance evaluations stating he consistently exceeded the expectations of his job requirements throughout his 12 years of service.

Public Defender, Doreen Boxer, set out to change the culture of the office after she was hired in 2006. Lawrence alleges Boxer and the Supervising Deputy Public Defender, Lauri Ferguson, targeted highly paid deputy public defenders who were close to retirement for termination and instructed management to harass and intimidate tenured

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

employees until they quit. Boxer and Ferguson, along with Chief of the Bureau of Investigations, Martin Dante, constructed an interrogation room to interrogate and intimidate employees. Lawrence alleges employees were "unexpectedly thrust from perceived comfortable job positions and put back on the front lines as fulltime trial attorneys," "rotated to significantly farther jurisdictions, which doubled or tripled their commute times, for no apparent reason" or "were singled out by management and nit-picked to death for nominal things like being a few minutes late or too much internet use" and were "subjected to harsh interrogations about alleged minor violations." He also contends newer competent attorneys "were strung along on probation for over two years" and then fired before they acquired any civil service rights.

Lawrence challenged a proposal in 2007 by Boxer and Ferguson to implement a mandatory tape recording policy for all interviews conducted by the public defender investigators. He alleges his opposition, joined by others, stopped implementation of the plan, but led to personal contempt toward him culminating years later in the investigation and termination that is the subject of this action.

Lawrence interviewed for a supervisor position in 2007, but was "belittled" in the interrogation room "to teach him a lesson not to speak out against [Boxer and Ferguson] or to think that he was any better of an attorney than anyone else, despite having the excellent record he had." According to Lawrence, a less qualified applicant was awarded the position.

In 2008, Lawrence applied for and was assigned to an elite unit called the "Central Homicide Panel," which exclusively handled non-capital murder cases. He was told he

3

and the other members of the unit would receive a pay increase and a promotion to a deputy public defender V position as a result of the difficult assignment. However, Boxer gave the promotion to others she favored over him, saying there were insufficient funds to give the promotion to all unit members.

In June 2009 Lawrence again interviewed for a supervisor position. When Ferguson asked what he thought about her management style, Lawrence told her the administration's tactics of harassing and mistreating employees and abusing disciplinary proceedings created an environment of fear, which was not good for the office. Instead of hiring Lawrence, they hired Geoffrey Canty and made him Lawrence's supervisor.

Lawrence alleges he did not know Canty's allegiance was to Boxer and Ferguson. Lawrence shared with Canty media reports of a sexual affair between Boxer and District Attorney Michael Ramos and privately told Canty he hoped this scandal would lead to Boxer and Ferguson losing their jobs because Lawrence did not like the hostile work environment they had created in the office. Lawrence alleges Canty retaliated against him for expressing "concerns that the defendants were violating state statutes, including state conflict of interest rule violations directly related to false claims against the government."

B

Lawrence started a jury trial in the middle of June 2009 representing one of four defendants charged with multiple counts of robbery and carjacking, kidnapping, torture, and first degree murder with special circumstances. These charges made his client

4

eligible to receive a sentence of life without the possibility of parole and was the most serious trial Lawrence had ever defended.

While preparing for trial, Lawrence redacted two sentences from a report prepared by investigator Michael Carruth regarding a witness interview. Lawrence electronically manipulated the line spacing so it was impossible to tell the document was altered. Lawrence then disclosed the altered document to the deputy district attorney as part of discovery. Lawrence contends he deleted the sentences based on a stipulation and court ruling that statements of one criminal defendant could not be used against another to avoid trials by separate juries.

When investigator Carruth was subpoenaed to testify in August 2009, Carruth learned Lawrence had redacted his report. Carruth told Lawrence he was concerned he could not honestly testify it was his report if he was asked to use the report to refresh his recollection. Lawrence tried to convince Carruth to testify the report was his even with the omissions. Lawrence made other suggestions to avoid the problem such as bringing his original report with him to use on the stand if asked or to memorize the report so he would not have to rely on it. Carruth believed these actions would have misled the court to believe the report produced to the deputy district attorney was not altered. Carruth reported the incident to Dante who reported the incident to Boxer and Ferguson.

Canty, allegedly at the direction of Boxer and Ferguson, questioned Lawrence about the report. Lawrence told Canty the witness did not testify during trial regarding areas concerning the redacted information, when she actually had so testified. As a

result, Canty told Ferguson the office did not have a legal or ethical duty to produce the unaltered report.

C

Investigators Dante and Randy Bliss interviewed Lawrence regarding this incident on September 9, 2009, and November 12, 2009. During those interviews, Lawrence made statements the investigators determined were not true. Lawrence contends the motive for this investigation was to retaliate against him for reporting violations of various state and federal rules, regulations and laws. He also contends the lengthy interviews were conducted in a small interrogation room and he felt he was falsely imprisoned. He alleges his first interview upset him to the extent he was required to seek medical attention and was placed on short-term disability.

In April 2010 Lawrence was assigned to represent a former member of the County Board of Supervisors (the Board), William Postmus, who had been charged with corruption. Postmus believed he was prosecuted in retaliation for exposing the alleged affair between Boxer and Ramos. Lawrence reported to Canty concerns about conflicts of interest related to Postmus's representation. Lawrence believes he unknowingly "caught these defendants in a lie" regarding the reason stated on the declaration of conflict filed with the court. The conflict statement indicated the public defender's office represented a witness who testified adversely to Postmus whereas Lawrence alleges the public defender's office should never have represented the adverse witness due to a separate conflict of interest.

6

Shortly thereafter, on May 27, 2010, Lawrence alleges he was placed on administrative leave and told to clean out his office while others watched. As he left, he was handed two binders containing 800 pages of discovery including a 119-page internal investigation report and a 32-page notice of dismissal signed by Boxer. Lawrence alleges the " 'Notice of Proposed Dismissal' included several extreme and outrageous charges of dishonesty by [Lawrence] that shock one's conscience."

Boxer served as the hearing officer at his "*Skelly* hearing" in July 2010.[2] Lawrence alleges he "stood up" to Boxer during the *Skelly* hearing and told her the language used in the notice met the legal definition for extortion because it threatened criminal action if he did not resign. Based on written and oral statements made during the *Skelly* process, the County concluded Lawrence had threatened to report Boxer and Canty to the State Bar in reaction to the proposed dismissal and threatened to file a grand jury complaint.

Lawrence alleges he was confined to his home for the several months he was on administrative leave. He was required to call in each day and could not leave during working hours without permission. He alleges this exacerbated his health problems.

---

[2] In *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*), the Supreme Court held due process of law affords a permanent public employee certain procedural rights before the effective date of his or her discipline or dismissal. Although a full evidentiary hearing is not required, "[a]s a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id*., at p. 215.) A public employee is entitled to a full evidentiary hearing within a reasonable time after the disciplinary action is imposed. (*Ibid.*)

During this period Lawrence met with a member of the Board. Lawrence reported his concerns about Boxer's administration and conflicts of interest.

On October 8, 2010, the County served Lawrence with an order of dismissal. The reasons stated for the action included: (1) solicitation of Carruth to give factually inaccurate or misleading testimony, (2) dishonesty with his direct supervisor, Canty, regarding the testimony elicited from the witness during trial, (3) making misrepresentations and being dishonest during the administrative interviews, (4) threatening to present State Bar charges against County employees and (5) threatening to file a complaint with the County's grand jury in reaction to being served with the notice of proposed dismissal.

An order of dismissal is the document from which an employee may appeal his dismissal to the County Civil Service Commission (Commission). Lawrence alleges the order of dismissal contained outrageous claims. Lawrence appealed his termination to the Commission.

Boxer and Ferguson left office in December 2010, after either resigning or being terminated. Thereafter, the interim public defender met with Lawrence informally and offered to reinstate him with a promotion to deputy public defender V. Lawrence declined, stating he still felt the office was a hostile work environment for him without additional changes.

The County withdrew the order of dismissal and reinstated Lawrence after placing a letter of reprimand in his file. Lawrence was told he would receive back pay offset by

8

any earnings he made during the period he was terminated. Lawrence has not returned to work and contends the reinstatement deprives him of a Commission hearing.

D

After the County denied his claim for damages, Lawrence filed this action. The second amended complaint set forth causes of action for: (1) retaliation in violation of the California False Claims Act (CFCA) (Gov. Code § 12653);[3] (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional misrepresentation (fraud); (5) false imprisonment; (6) defamation: libel; (7) defamation: slander; and (8) intentional infliction of emotional distress.

In the retaliation cause of action, Lawrence alleges the County retaliated against him for his investigation and reporting concerns about Boxer "continually using state funds to defend criminal defendants, whom she had no legal right to defend because of blatant violations of attorney conflict of interest rules outlined in the Rules of Professional Conduct 3-310 for failing to disclose to thousands of her clients the alleged personal relationship with [Ramos]." He further alleges he reported Boxer and Ferguson for "using their state funded positions to maliciously attack other attorneys of the San Bernardino County Public Defender's Office without cause, in violation of their

---

[3] Government Code section 12653, subdivision (a), provides in pertinent part: "Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of his or her employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop one or more violations of [the CFCA]."

Government Code section 12653, subdivision (b), provides for a civil enforcement action and enumerates the relief available in such an action.

9

employment contract and in an effort to bankrupt the San Bernardino County Public Attorney's Union by exhausting their resources."

The trial court granted the County's anti-SLAPP motion as to the fourth and sixth causes of action for misrepresentation/fraud and libel. It denied the anti-SLAPP motion as to the only remaining causes of action, first through third, concluding the gravamen of these causes of action were not protected speech and not subject to the anti-SLAPP statute.[4]

## DISCUSSION

### I

### *Generally Applicable Principles*

Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." This statute provides " 'a procedure for the early dismissal of what are commonly known as SLAPP suits . . . —litigation of a harassing nature, brought to challenge the exercise of protected free speech rights.' [Citation.] A SLAPP suit is

---

[4] The trial court sustained the County's demurrer without leave to amend as to the fifth and seventh causes of action for false imprisonment and slander. It also sustained the County's demurrer with leave to amend as to the eighth cause of action for intentional infliction of emotional distress. According to the County, Lawrence did not amend as to this cause of action and it is not part of this appeal.

generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 40.) The Legislature has mandated that courts construe this statute "broadly" in favor of the moving party. (§ 425.16, subd. (a).)

The analysis of an anti-SLAPP motion involves two steps. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.)

11

II

*The Causes of Action Arise From Protected Activity*

For the first step, the anti-SLAPP statute identifies four categories of actions that are " 'in furtherance of' " a defendant's free speech or petition rights. (§ 425.16, subd. (e); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) The County relies on the second category to assert the statute's applicability: "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

In determining whether a claim *arises* from the protected activity, a court must "disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion. [Citation.] We assess the principal thrust by identifying '*[t]he allegedly wrongful and injury-producing conduct* . . . that provides the foundation for the claim.' " (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272, italics added.) The anti-SLAPP statute focuses on "the defendant's *activity* that gives rise to his or her asserted liability— and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

In this case, the causes of action for retaliation in violation of the CFCA, breach of contract and breach of the covenant of good faith and fair dealing all arise, at least in part,

12

from the County's investigation into whether Lawrence engaged in misconduct and its decision to terminate his employment.

Internal investigations of misconduct by government employees, and statements or reports made during investigations, are protected activity under the anti-SLAPP statute. (*Miller v. City of Los Angeles* (2008) 169 Cal.App.4th 1373, 1383 [claims based on investigation into a public employee's misconduct on the job satisfy the first prong of § 425.16]; *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544 [internal investigation of government employee covered by statute]; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1061 [claims based on surveillance, investigative reports, an administrative hearing and subsequent resolution adopted by city covered by statute.) Personnel actions, such as termination or dismissal following such investigations, are also protected by the anti-SLAPP statute. (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1394 [administrator's statements and communicative conduct as a hearing officer denying an employee grievance protected under § 425.16, subd. (e)(2)].)

In the retaliation cause of action, Lawrence alleges "defendants conspired to retaliate against plaintiff for his investigation of them for violations of the [CFCA]. Defendants violated [the CFCA] through a pattern of harassment designed to intimidate plaintiff, that included misrepresentation, libel, false imprisonment, and the intentional infliction of emotional distress. This was accomplished through multiple lengthy unnecessary interrogations, unreasonable delays in administrative proceedings without cause, denial of promotions, wrongful termination without cause, and abuse of civil

13

service process by forcefully reinstating plaintiff against his will in order to gain a legal advantage." Thus, the gravamen of this cause of action, i.e. the allegedly wrongful and injury producing conduct, was the investigation, the administrative proceeding, the order of dismissal and subsequent withdrawal of the discipline. "Absent the investigation and report, nothing of substance exists upon which to base a retaliation claim." (*Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 611.)

The breach of contract and breach of the implied covenant of good faith and fair dealing claims incorporate the allegations regarding the investigation and administrative proceedings and allege Lawrence was terminated without good cause based on the defendants' "outrageous conduct." Since the investigation and decision to dismiss Lawrence are protected by the anti-SLAPP statute, these causes of action, based on the same alleged wrongdoing, are also protected.

Lawrence contends the anti-SLAPP statute should not apply because the County's actions were "illegal." We are not persuaded. The County has not conceded and Lawrence has not met his burden of conclusively proving the County's conduct was illegal. (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 384-385.) Therefore, the anti-SLAPP statute applies.

## III

### *Lawrence Has Not Established A Probability of Prevailing*

#### A

Because we conclude the County met its burden to show the retaliation claims are governed by the anti-SLAPP statutes, we proceed to the second step of the analysis.

14

Although the trial court did not reach this step, we may consider this issue because our review is de novo. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1195.)

In this step, the burden shifts to the plaintiff to show a probability of prevailing on its claims. To meet this burden, the plaintiff cannot rely solely on the allegations in the complaint and must present evidence that would be admissible at trial. (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.)

The plaintiff's burden to show a "probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West, supra*, 51 Cal.4th at p. 820, quoting *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379-382.)

B

Lawrence has not met his burden of showing a probability of prevailing on his claims. To begin, Lawrence has not complied with fundamental rules of appellate procedure. The 10 pages of Lawrence's respondent's brief arguing he has established a

15

"high probability of prevailing" contains *no* citations to the record on appeal. Instead, Lawrence refers to his statement of facts summarizing the allegations in his second amended complaint and merely says the facts "are supported by the 139 exhibits," which Lawrence attached to his response to the anti-SLAPP motion. The reference to the statement of facts does not assist Lawrence. The statement of facts similarly goes on for pages without a record citation and, when a citation is provided, the reference may span tens or even hundreds of pages.

This is improper. "Any statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—must be supported by a citation to the record." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 9:36, p. 9-12; Cal. Rules of Court, rule 8.204(a)(1)(C).) " 'It is neither practical nor appropriate for us to comb the record on [the party's] behalf.' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.) Given the lack of record citations, we disregard arguments not supported by the record or deem the points raised as forfeited. (*Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388, 391, fn. 2 ["because [the respondent's] brief fails to provide a citation to the appellate record for these facts, we do not consider them"]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800 [" 'When [a] . . . brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point

16

purportedly made.  [Citations.]  We can simply deem the contention to lack foundation and, thus, to be forfeited.' "].)[5]

C

Even if we were to consider Lawrence's arguments, the County has demonstrated Lawrence cannot meet his burden of establishing a probability of prevailing.  The retaliation cause of action is barred since all of the statements made in the investigation, notice of proposed dismissal and order of dismissal upon which he bases his claims are absolutely privileged under Civil Code section 47.

Civil Code section 47, subdivision (a), provides an absolute privilege for communication made "[i]n the proper discharge of an official duty."  To the extent the retaliation cause of action is based on statements in Boxer's Order of Dismissal, these statements are absolutely privileged under this subdivision because they were made in the discharge of Boxer's official duty as the public defender and the head of the agency.  These statements are privileged even if the statements were made in bad faith or with malice.  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216.)

Civil Code section 47, subdivision (b), provides an absolute privilege for any publication or communication made in an "official proceeding authorized by law."  The "official proceeding" privilege protects " 'communications to or from governmental

_____

5    We note this does not appear to be a simple oversight regarding proper preparation of an appellate brief.  Lawrence's opposition to the anti-SLAPP motion addressing the probability of prevailing similarly contained no citations to evidence supporting his claims.  Instead, Lawrence merely submitted 139 exhibits in opposition.  We do not condone this sloppy form of advocacy.

17

officials which may precede the initiation of formal proceedings' " to the same extent as statements made in the course of judicial proceedings. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 362, quoting *Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156.)

Lawrence's retaliation claim is based on statements and communicative conduct contained in the internal investigation, the notice of dismissal, amended notice of dismissal and subsequent order of dismissal. These communications are absolutely privileged under Civil Code section 47, subdivisions (a) and (b).

We disagree with Lawrence's argument the privilege should not apply because the communication was not in "good faith." In *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251, the court stated *prelitigation* communication "is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." However, as the court explained, " '[it] is important to distinguish between the lack of a good faith intention to bring a suit and publications which are made without a good faith belief in their truth, i.e., malicious publications. The latter, when made in good faith anticipation of litigation, are protected as part of the price paid for affording litigants the utmost freedom of access to the courts. This policy consideration is not advanced, however, when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has no "connection or logical relation" to an action and is not made "to achieve the objects" of any litigation.' " (*Ibid.*)

18

In this case, there can be no dispute official action against Lawrence was seriously considered and was, in fact, undertaken. All of the statements and communicative conduct at issue in this case were part of an official proceeding. Whether there was an improper motive for pursuing these proceedings does not bear on the analysis for application of the privilege under Civil Code section 47, subdivision (b). Therefore, Lawrence's retaliation cause of action is barred.[6]

## D

Finally, Lawrence cannot establish a probability of prevailing on his breach of contract and breach of the implied covenant of good faith and fair dealing causes of action.

Lawrence has not demonstrated he can sue under contract theories for breach of terms and conditions of civil service employment. "[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. [Citations.] Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that '[t]he terms and conditions of civil service employment are fixed by statute and not by contract.

---

6      The only allegation arguably falling outside the scope of the privilege is the allegation retaliation was accomplished, in part, through "denial of promotions." However, according to the operative complaint, the promotion opportunities predated Lawrence's reporting of statutory or rule violations by his superiors that allegedly led to their retaliation against him. Therefore, Lawrence has not demonstrated he can prevail on his retaliation claim based on "denial of promotions."

19

[Citations.] Indeed, '[t]he statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.' " (*Miller v. State of California* (1977) 18 Cal.3d 808, 813-814; see *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23-24 [public employees cannot maintain causes of action for breach of implied covenants].)

The Supreme Court in *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171 did not overrule this general rule. However, it held "under California law, a vested right to health benefits for retired county employees can be implied under certain circumstances from a county ordinance or resolution" (*id*., at p. 1194) and " '[w]hen a public employer chooses . . . to enter into a written contract with its employee (assuming the contract is not contrary to public policy), it cannot later deny the employee the means to enforce that agreement.' " (*Id*., at p. 1182.)

The issue here does not involve vested rights to compensation or health benefits already earned. Lawrence alleges he was terminated without cause. Lawrence baldly asserts, without citation or analysis, he can prevail on a breach of contract cause of action based on the memorandum of understanding (MOU) between the County and the San Bernardino County Public Attorneys Association. However, even if we were to assume the MOU at issue here falls within an exception to the general rule, the argument does not assist Lawrence in pursuing this action in state court. Under the terms of the applicable MOU, the Commission is the exclusive forum for disciplinary proceedings.

Lawrence availed himself of the MOU's grievance procedure by appealing his termination to the Commission. The Commission approved the appeal and scheduled a

20

hearing. After Lawrence declined the opportunity to be reinstated with back pay and a promotion, the County withdrew the discipline and the Commission cancelled the scheduled hearing.

Lawrence contends, with no evidentiary support or citation to authority, he should have a right to bring his contractual claims because he had no right to contest the letter of reprimand the interim public defender placed in his file after she purged his file of the investigation and order of dismissal. A plain reading of the MOU does not support Lawrence's contention.

The MOU states "[a]ny dispute which may arise between parties involving the application, meaning, or interpretation of the Personnel Rules shall be settled by the [Commission] in accordance with the appropriate appeal procedure established in the Personnel Rules . . . ." In the section discussing disciplinary hearings covered by the grievance procedure, the MOU states in cases of "major discipline" (defined as termination, demotion or suspension of 30 or more calendar days), the costs for the disciplinary hearing are shared. However, for "all other disciplinary cases, either party may request the use of a hearing officer" and if only one party requests a hearing officer, that party will pay the hearing costs. These provisions do not support Lawrence's contention he was unable to appeal any disciplinary action short of termination. The fact this was no longer a "major discipline" case does not appear to have precluded review, it may have only impacted how the costs for a hearing officer could be born.

There is nothing in this record to suggest Lawrence objected to the cancellation of the hearing or availed himself of the grievance procedure provided by the MOU to appeal

21

the disciplinary action of placing a letter of reprimand in his file.  Therefore, Lawrence has not presented any evidence or authority demonstrating a probability of prevailing on his second and third causes of action.

## DISPOSITION

The order denying the County's special motion to strike the first, second and third causes of action is reversed.  The trial court is directed on remand to enter a new order granting the special motion to strike and to conduct any further proceedings consistent with this opinion.  The County is awarded its costs on appeal.


McCONNELL, P. J.

WE CONCUR:

HALLER, J.

AARON, J.